# Richmond

LEE ROY HARRIS V. J. H. HOWERTON AND J. E. HOWERTON.

January 13, 1938.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

648

651

The opinion states the case.

*Hutcheson & Hutcheson* and *George R. Humrickhouse,* for the plaintiff in error.

*Irby Turnbull,* for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

Lee Roy Harris, hereinafter called the plaintiff, instituted this action to recover of the defendants, J. H. Howerton and J. E. Howerton, damages for injuries arising out of the collision of an automobile driven by him with the rear end of a parked truck, alleged to be owned by the defendants. The notice, as amended, alleged that the truck, unattended and without lights thereon, was left standing at night upon a highway, in such a manner as to render dangerous the use of such highway.

The trial court, after hearing the evidence of the plaintiff, struck the evidence as to J. H. Howerton, and the case proceeded as to J. E. Howerton. Upon the conclusion of all of the evidence, the trial court refused a further motion to

strike the evidence as to J. E. Howerton, and the jury returned a verdict against the latter in the sum of fourteen hundred dollars.

The trial court granted a motion to set aside the verdict of the jury, on the grounds that the plaintiff was guilty of contributory negligence, and that the verdict was contrary to the law and the evidence, and entered judgment for the defendant.

The plaintiff offered no evidence to show that the truck was improperly parked other than the failure to display a lighted rear light. He bases his right of recovery on the contention that the sole cause of the collision was the failure of the defendant to display such a light on the truck while it was parked at night on a street of a town used as a public highway.

The defendant, conceding his own negligence, relies upon the contributory negligence of the plaintiff to defeat a recovery. He attacks the plaintiff's evidence as incredible and contrary to the physical facts shown to have been existing.

There are numerous grounds of error assigned to the action of the trial court, but in the view that we take of the case, it is only necessary for us to consider the issue as to whether or not the plaintiff was guilty of contributory negligence as a matter of law.

The accident occurred on Beauty street, in a residential section of the town of Clarksville, about twelve o'clock on Sunday night, January 19, 1936. The weather was clear and cold, with some wind blowing. The street is used as U. S. Highway No. 15, and while not shown to have been taken over by the State Highway Department, it is a connecting link in the State highway system, and so used. The street is twenty-four feet wide from curb to curb, with a curb on each side seven or eight inches high. It runs north and south, and is paved with cement. The truck was parked close against the curbing on the west side of Beauty street, facing south, between the frontage space of the homes occupied by the defendants, a little over one hundred feet from an intersection with another street called Commerce street.

Proceeding south, past the point of the accident, the street is straight for a distance of nine hundred feet. This straight stretch begins as the street starts down a gradual incline from the crest of a grade about five hundred feet north from the point of the accident. Located between the sidewalk and the curb are trees whose limbs overhang the street. The trees in December were bare of leaves, and their limbs sufficiently high from the street to permit automobiles and other vehicles to pass thereunder. Proceeding from the top of the grade towards the scene of the accident, one first comes to Caroline street, which intersects Beauty street. There was a street light placed in the center of that intersection, and the distance from that light to the point of the accident was four hundred and ten feet. The next street is Sizemore, a dead-end street, which enters Beauty street from the east. A short distance from where that street enters Beauty street, was a street light extended from the arm of a pole, and the distance from the light pole straight across to the point of the accident was ninety-eight feet. Next comes an intersecting street, called Commerce street, and in the center of this street was a suspended street light. The distance from this last light to the point of the accident, at the rear end of the truck, was one hundred and thirty-two feet. All of these lights were on at the time of the accident.

The truck was a large cattle truck, with a cab in front and a closed built-up body in the rear, having a drop-gate in the rear to be used as a walkway for cattle to go into the body. There was no top on the body. Its width was six feet, eight inches, and the distance from the ground to the top of the body was eleven feet. The truck had not been painted for some time, and it was described by the plaintiff as having a color about the same as the roadway and surrounding objects. A witness for the plaintiff said the truck was dark in color, with some mud on it. Another witness for the plaintiff described the roadway as of "light color," of "the color of natural cement," and like the color of any other cement road after it has been used for some

time.   There were two other automobiles parked on the same side of the street in front of the truck.   There were slight embankments on both sides of the street.

The plaintiff is twenty-nine years old.   His occupation is that of a house painter for the Federal Land Bank, and most of his time is spent in traveling over his county in that occupation.   He had had considerable experience as a driver of automobiles, and admittedly had been connected with several accidents, although they were not shown to have been caused by his recklessness.   His home is in Chase City, in Mecklenburg county.   He had worked in Clarksville several years before, and at the time of the accident he was returning to the home of his wife's parents about four miles south of Clarksville, where he and his wife were then visiting.

The automobile, a 1929 Model Ford coupe, belonged to his brother, who worked in a garage.   The plaintiff testified that the automobile had been recently inspected and certified as properly equiped and adjusted, and that at the time of the accident the brakes and lights were in good working condition, and complied with the legal requirements.

The plaintiff, who was traveling alone, approached Beauty street from the north straight stretch of the highway.   Upon his direct examination, he gave the following account of the collision:

"I was going down Beauty street about twenty or twenty-five miles an hour; I was meeting a car, and, as far as I could see everything was all right and clear.   The lights blinded me for a few seconds because of the car I was meeting; and as the car passed it cleared the light out of my eyes and it leaves me in the rear of a big cattle truck.   It was too late to stop, and the only chance was to cut short to my left and miss it, and I cut as short as I could and side-swiped the left corner of the truck.   I didn't have time to use the brakes.   Naturally I grabbed for them."

He estimated the speed of the approaching car at forty miles an hour.   He said if he had used his brakes he could

not have stopped without running into the truck, and that if the truck had had lights on its rear he would have been able to see it, and to have avoided the accident; that he did not strike the other car; and that there was not enough room between the car he was meeting and the parked truck to have passed between them without striking either. He struck the rear of the truck about eight inches from its left rear side. The car of the plaintiff, without having its brakes applied, then ran diagonally across the street, and stopped at the left-hand curb, with its front opposite the front of the truck.

The oncoming automobile, which the plaintiff says he met, did not stop. A number of persons residing in the neighborhood, some of whom had retired for the night, were aroused by the loud noise resulting from the collision, and immediately came out, but none of them saw the other automobile.

As a result of the collision, the plaintiff received serious personal injuries. The truck was knocked easterly and southerly about two and one-half feet, its dual locked wheels leaving marks to that effect on the pavement. Its tail lamp was broken off, and eight clamps which held the body to the chassis were moved. One three by three post was broken, and the body spring and the chassis were bent, the whole body being moved against the cab. The Ford automobile was so badly smashed that a witness for the plaintiff said he would not have given ten dollars for it. The front axle was bent, the gas tank in front driven back into the door, the body crushed, and a tire blown out.

The plaintiff admitted that he was familiar with Beauty street, which he had traveled for years, and that he knew it was a habit of the people in Clarksville to park their cars on Beauty street without lights. The town of Clarksville had not, in accordance with Virginia Code, 1936, section 2154 (145), enacted an ordinance that specifically authorized the parking of cars without lights, although such practice was common with its citizens.

On cross-examination, in explanation of the circumstances, the plaintiff made the following several different and contradictory statements. He stated that he first saw the approaching car when he had proceeded about half the distance from the rise in the street to the point of the collision, and places the position of that car, at that time, as "just under the street light," at Commerce street, about one hundred feet southwardly of the truck. He said that his vision was not affected by the lights of that car when it first came in sight. He later testified that his vision was affected when he first saw the approaching car, and that he was then about one hundred feet from the point of the accident. He says that he knew there was a swinging street light at the intersection of Commerce and Beauty streets, but that he does not know whether he saw that light or not, as he was watching the other car, and paid no attention to that light. He further says that as the oncoming automobile approached, its lights blinded him "to a certain extent," and explained that he meant while the lights interfered with his vision, they did not totally blind him. When affected, he tilted his headlights down to see the roadway better, and took his foot off the gas throttle, reducing the speed of his car as it rolled down the grade. That he did not stop, or undertake to bring his car to a halt when the lights interfered with him, because "I didn't think it necessary; I thought I could see and the way looked clear to me." He made the further excuse that he did not see the swinging street light because of the trees. Upon being reminded there were no leaves on the trees to obscure the light, he again said that he did not pay any attention to that light.

On further cross-examination, the plaintiff made confusing and contradictory statements with reference to the sufficiency of his lights. He stated that his lights that night were not sufficient to distinguish an object in the road or a person the regulation distance, even when he was driving along and not meeting a car, and that when he dimmed his lights, they focused on the ground about thirty feet in front of the car. He was carefully examined on these matters,

both on cross and re-direct examination, but stuck to this latter testimony. His examination on this subject was so exhaustive that the trial court refused permission for a re-examination after the evidence in the whole case had been concluded.

On behalf of the defendants, numerous witnesses of high character, some wholly disinterested, testified that they had made, or had participated in making, physical tests at night with reference to the visibility of the truck parked where it was on the night of the accident. It was testified, without contradiction, that a person occupying a car going south, driving at a rate as high as thirty-five miles an hour, meeting an oncoming car, with full front lights burning going north, as the place in question was approached, could plainly see the parked truck from a point more than three hundred feet to the north; that the suspended street light at the intersection of Commerce street not only lessened the glare of the lights of the oncoming car, but actually improved the vision as to objects on the street; that even with the leaves on the trees, both the street lights and the lights of a car approaching from the north, disclosed the truck; and that there was ample room on the street for two cars to pass opposite a third car parked at the curb. One of these witnesses, in confirmation of the plaintiff's testimony that a person could see all the way down the street, stated that on the night in question the lights on the street lighted up most of the distance "almost like day."

There is other evidence contradictory and unfavorable to the plaintiff's claim, relating to the speed of his car, the color of the truck, and the existence of the approaching car, which, in view of the jury's verdict, we have not considered.

We have then, after giving consideration to that evidence, which is most favorable to the plaintiff, the following situation. The plaintiff approached in the night time a long, straight stretch of highway, with which he was familiar. The night was clear and the street was well lighted. There was a large truck parked on the highway beside the right-hand curb, slightly more than one hundred feet from one

light and ninety-eight feet from another. The truck was between the lights at the intersection and the approaching car. The Ford car was going down-grade with its headlights, if properly adjusted as the plaintiff claims in one part of his testimony, throwing its beams beneath the limbs of any trees extending on the highway. It was being driven on its right-hand side of the highway, with its lights shining in the direction of a truck, parked in its approaching path.

If it be true, as the plaintiff says, that the oncoming car was under the street light at Commerce street, a little over one hundred feet south from the truck, both when he first observed it, and when he was first affected by its lights, and running at forty miles an hour, when he was half of the distance from the crest of the grade to the parked truck, a distance of approximately two hundred and fifty feet to the north of the truck, and he was running only from twenty to twenty-five miles an hour, then by a mathematical calculation, the oncoming car would have passed him at a distance considerably more than one hundred feet to the north of the truck. Within this distance of more than one hundred feet, opportunity was presented to the plaintiff to see the parked truck, both from the light of his headlights and the light of the street lights. Within such a distance, there was ample space for him to have made a turn to the left, and to have avoided the collision, or to have put on his brakes to stop the car.

Or if it be true, as the plaintiff says, that he was only one hundred feet from the point of the collision, when his vision was first interfered with by the light from the approaching car, then in the preceding one hundred feet, the lights on his car should have disclosed the parked truck.

It may be true the reason why the plaintiff saw neither the street light nor the parked truck was that he was paying close attention to the oncoming car. This explanation is not sufficient excuse, however, for failure to keep a lookout in the direction ahead.

Whether we accept either his statement that he had proper lights, or that his lights were insufficient, necessary inferences from the one accepted are binding upon him, and he cannot escape from either horn of the dilemma. If we accept either of his statements as to lights, or either of his statements about the location of his car when he was first affected by the lights of the approaching car, he was not exercising the care required of him. His case cannot be made stronger than he has made it himself. The failure to give any clear and satisfactory account of, or reason for, the collision, will not justify a judgment based on speculation or sympathy. *Virginia Electric and Power Company* v. *Vellines,* 162 Va. 671, 175 S. E. 35.

In this case it is not so important that the plaintiff met an oncoming car with bright lights, as are the circumstances of such meeting. It is incredible, under the circumstances shown to have been existing on the night in question, both from the plaintiff's own testimony and the uncontradicted evidence of others, that the plaintiff could have been vigilant and keeping a proper lookout, and with normal vision have failed to see what he must have seen if he had been observant. We are not required to believe that which the physical facts demonstrate to be untrue. *Chesapeake & Ohio Railway Co.* v. *Barlow,* 155 Va. 863, 156 S. E. 397.

We are not unmindful of the weight which is, and should be, given to the verdict of the jury. A verdict disapproved by the trial judge is, however, not entitled to the same weight. The trial judge should not set aside a verdict merely because he would, as a juror, have found a different one, but he should exercise the supervisory power conferred by law to consider whether, from the whole evidence in the case, the judgment is contrary to the law and the evidence, or is plainly wrong. Where, in a tort action, the plaintiff fails to show his right to recover, or his contributory negligence as a matter of law is disclosed, it is the duty of the trial court to exercise such power and authority. *Saunders* v. *Temple,* 154 Va. 714, 153 S. E. 691; *Shoemaker* v. *Andrews,* 154 Va. 170, 152 S. E. 370.

A number of cases are cited to us from other jurisdictions. A careful examination of these cases discloses that in none are the material facts identical with the instant case. The facts differ either in relation to the condition or character of the roadway, the position of the parked vehicle, or in some other material circumstance. In some instances, additional factors are involved.

In Virginia, we held in the case of *Kinsey* v. *Brugh*, 157 Va. 407, 161 S. E. 41, that "The violation of an ordinance or statute does not make the violator guilty of negligence which will support a recovery for damages unless such violation was the proximate cause of the injury." (Cases cited.)

The nearest approach in point of facts to this case in Virginia is that of *Pratt* v. *Miles*, 166 Va. 478, 186 S. E. 27. There the driver of an automobile, which had a rear end collision with a motorcycle, contended that he did not see the motorcycle standing amidst surrounding lights, because it did not display a rear red light. This court held that the uncontradicted evidence showed that the surrounding lights made the motorcycle plainly visible to a driver keeping a proper lookout, and that his failure to keep such a lookout was the proximate cause of the collision.

It is the established rule in Virginia that the question of contributory negligence is a question for the jury when the facts are in dispute; but if the facts upon which that question hinges are so certain and uncontroverted that fair-minded men ought not to differ in their conclusions therefrom, then it is a question for the court.

With the above principle in mind, and considering the similarity of the circumstances in this case with those found in the case of *Pratt* v. *Miles, supra,* the rule there applied is applicable here.

Paraphrasing, to a certain extent, the language of Mr. Justice Eggleston, in the last mentioned case, the following situation is true of this case:

The evidence is uncontradicted, save by the negative testimony of the plaintiff that he did not see the truck, that

the highway was sufficiently lighted to show its presence; and that with proper lights on the plaintiff's car the driver could have discerned its presence if he had been keeping a proper lookout, regardless of whether a rear light was displayed. If a partial, temporary blindness was caused by the headlights of an approaching car, the same blindness would have blotted out the rear red light. If he did not see the large cattle truck standing in full view of his approaching lights, how could it be said he would have seen the small red light which was lacking? Whether the plaintiff passed the oncoming car over one hundred and fifty feet from the point of collision, or whether he passed it at one hundred feet from that point, there was a distance within which the truck should have been seen in time to have avoided the collision by the exercise of due and ordinary care. In one instance, the opportunity was afforded after passing the oncoming car, and in the other instance before the light of the oncoming car affected the vision of the plaintiff. The failure then to have the required rear light was not the sole proximate cause of the collision. The continuing failure to keep a lookout, and to observe the parked truck was the proximate cause thereof. The negligence of both parties was the concurring and proximate cause, and we cannot undertake to balance or apportion the degrees of comparative negligence.

The conclusion which we have reached makes it unnecessary to consider the assignments of error relating to the action of the trial court in dismissing the proceedings as to the defendant J. H. Howerton, and to its refusal to admit evidence of the amount of the damage to the car driven by the plaintiff, and owned by his brother.

The question of whether J. H. Howerton was, in fact, a part-owner of the truck, or whether it was being used in his behalf, was sufficiently raised by the evidence to require its submission to the jury under proper instructions.

It seems to be well settled that a bailee of personal property may recover compensation for any wrongful in-

jury to the article bailed while in his possession. 3 R. C. L. 127; 6 C. J. 1168; 6th Am. Jur. 419.

It is evident that if there could be no recovery, under the state of facts above recited, against J. E. Howerton, there could have been no recovery against J. H. Howerton, and in the absence of liability, the amount of damages is immaterial. These errors, therefore, are inconsequential and immaterial, and do not affect the result, nor the conclusion which we have reached.

After a critical review of all of the facts and circumstances contained in the evidence, we can reach no satisfactory conclusion other than that the proximate cause of the collision was the contributory negligence of the plaintiff. The judgment of the trial court will be affirmed.

*Affirmed.*