# Wytheville

## JAMES T. REID V. J. C. BOWARD, TRADING AS BOWARD TRUCK LINE AND CHARLES OVERCASH.

June 14, 1943.

Record No. 2689.

Present, All the Justices.

The opinion states the case.

*Allen & Allen*, for the plaintiff in error.

*Wayt B. Timberlake, Jr.*, for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

The proceeding arises out of a collision between an automobile in which James T. Reid, the plaintiff, was a guest passenger, and a tractor-trailer truck, owned by J. C. Boward and operated by his employee, Charles Overcash. Reid was painfully and seriously injured. On his motion for a judgment for damages against Boward and Overcash, there was a verdict for the defendants, which was approved by the trial judge and judgment entered thereon.

The plaintiff assails the verdict as being contrary to the law and the evidence and without evidence to support it. He also contends that the trial court erred in the admission of certain testimony.

This is another of those cases where the right of recovery is based solely on questions of fact. The two theories of the cause of the collision are irreconcilably different, and the pertinent evidence on behalf of the respective parties is wholly in conflict.

The plaintiff, a student at the University of Virginia, was a guest passenger in a 1941 Ford convertible sedan, owned by a fellow student and operated by another student. There

were five young men in the car. Reid and the owner of the car were on the front seat with the driver, the remaining two being seated in the rear. The accident occurred about one a. m., January 16, 1942, as the young men were returning to the University on main State highway No. 250, from a basketball game at William and Mary College. They were traveling towards the west.

The defendant, J. C. Boward, is the owner of the tractor-trailer truck which was being driven eastwardly by his employee, Charles Overcash, at the time of the accident. The tractor is seventeen feet long, the trailer twenty-two feet long and eight feet wide. The tractor is slightly narrower in width. The trailer had removable sides forty inches in height, its entire height from the ground being slightly more than seven feet. The trailer was loaded with 16,000 pounds of flour, its top being covered with a tarpaulin.

The weather was clear on the night of the accident. The road extended through a hilly countryside. The collision occurred on a straight strip of the highway between two small hills. The road, at the point of the collision, is a hard asphalt surface, approximately nineteen feet wide, with dirt shoulders on each side three or four feet in width. There is a double line in the center, consisting of a broken line on the south side and a solid line on the north side, the solid line being next to the line of travel of the Ford car.

The left front of the sedan, first scratching the tire of the left wheel of the tractor, came into slight collision with the left front corner of the defendants' trailer, and then continued along the side of the trailer and knocked off its left rear dual wheel. The broken axle of that wheel fell to the ground and made a cut in the surface of the highway, beginning nine inches to the defendants' right of the center of the road. The cut continued for about seventy-two feet near the center of the road, veering slightly towards the left, to the point where the truck was brought to a stop. The sedan rebounded from the trailer and came to rest upside

down about one hundred and ten feet west of the point of the collision on the north side of the highway.

The plaintiff and three of his companions testified that as they came to the crest of the hill, traveling about fifty miles an hour, they saw two sets of headlights in the road in front of them about three hundred yards distant ón the top of another crest. They assumed that there were two cars traveling abreast towards them, or that one was passing another. Their car, said they, continued on its proper side of the road, close to the right edge, with slightly diminished speed, to the point of collision, where it collided with the left side of the tractor-trailer, which had not completely returned to its proper side of the road. They did not observe any dimension or marker lights on either the defendants' tractor-trailer or on another tractor-trailer, operated by E. G. Wiseman, showing the other headlights they had observed, and which was closely following the defendants' truck.

In effect, their evidence was that the collision occurred because the defendants' tractor-trailer was to its left of the center of the highway, and failed to carry the lights required by Virginia Code, 1942, (Michie) section 2154 (141), that is, lights at the top corners of the trailer.

Overcash testified that his truck had passed the Wiseman truck one-half a mile west of the point of the accident, two hills removed to the west and that both his tractor and trailer had returned to his proper lane of travel, that is, entirely to the right of the center line of the highway before the collision; that, in addition to two front headlights and three marker lights across the top front of his tractor, there were marker lights on each of the lower four corners of his trailer, amber in front and red in the rear; that the Ford sedan approached him at a high rate of speed traveling to its left of the center of the road with brilliant headlights and a spotlight turned on his truck; that realizing a collision was imminent, he turned to his right towards the shoulder of the highway, but only succeeded in getting the tractor out of the path of the oncoming sedan; and that the line of the

cut made in the road by the broken rear axle was caused by the trailer plunging forward to its left as its rear wheel came off. The tractor-trailer was traveling between twenty-five and thirty miles an hour.

Wiseman, the operator of the second tractor-trailer, fully corroborated the testimony of Overcash, that all of the latter's vehicle was entirely on the right side of the road when it was first struck, having fully cleared the Wiseman truck about one-half a mile from the scene of the collision; that the defendants', tractor-trailer bore the marker lights described by Overcash, all of which, except the one on the lower left front of the trailer which was torn off by the collision, were burning after the accident; and that the Ford sedan was proceeding so far to the left of the center of its proper lane of travel that if it had continued its course, without striking the defendants' truck, it would have come into collision with his, Wiseman's, truck, which was one hundred and twenty feet behind the defendants' truck, on its right side of the road.

In effect, the evidence of the defendants was that the Ford sedan was traveling to the left of the center of the highway, and that notwithstanding the lights on both the tractor and the trailer it crashed into the left side of the tractor-trailer, while the latter was traveling in its proper portion of the highway.

Over the objection of the plaintiff, Wiseman was permitted to testify that, in addition to two burning headlights on his truck, he had two marker lights on the front of his tractor cab; six amber lights on his trailer front, two on each top corner, one at each bottom corner; and four red lights, one on each side of the back of his trailer, top and bottom,— a total of fourteen lights burning.

In view of the testimony of the witnesses for the plaintiff that they saw no proper marker lights burning on either tractor-trailer, this testimony was admissible for the purpose of contradicting them and to set out the surrounding facts and circumstances attending the collision in determining the exercise of proper care under the existing conditions.

"It may be stated generally that in an action growing out of an automobile accident any evidence of the conditions and circumstances leading up to and surrounding the accident which will throw light upon the conduct of the parties and the care or lack of care, exercised by them, is admissible." 5 Am. Jur., Automobiles, page 849.

One question of fact was whether the defendants' lights conformed to the statute. Another essential question of fact was whether a breach of the statute caused or contributed to the collision. The violation of a statute, although negligence *per se*, will not support a recovery for damages unless such violation proximately causes or contributes to the injury complained of. *Kinsey* v. *Brugh*, 157 Va. 407, 161 S. E. 41; *Harris* v. *Howerton*, 169 Va. 647, 194 S. E. 692; *Hubbard* v. *Murray*, 173 Va. 448, 3 S. E. (2d) 397; *Gregory* v. *Daniel*, 173 Va. 442, 4 S. E. (2d) 786.

The jury was fully instructed, without objection or exception, on all questions. They were told that if they believed the defendant truck driver was negligent in the operation of his tractor-trailer, or in the failure to maintain proper lights thereon, and such negligence, in either case, caused or efficiently contributed to the collision, they should find for the plaintiff. They were also told that if they believed the operator of the Ford sedan drove his car to his left across the center line of the highway and struck the tractor-trailer while it was on its proper side of the highway, and that this was the sole proximate cause of the collision, they should find for the defendants.

The questions of fact involved were peculiarly for the jury. The evidence of the defendants was positive and credible, and an impartial jury has accepted their version and rejected that of the plaintiff. Their verdict, under proper instructions, has settled all questions of fact. It has been approved by the trial court and, upon well settled principles in this jurisdiction, it cannot now be disturbed by us. *Norfolk, etc., R. Co.* v. *Richmond Cedar Works*, 160 Va. 790, 170 S. E. 5; *Virginia Elec., etc., Co.* v. *Morgan's Adm'r,*

162 Va. 123, 173 S. E. 373; *Bristow* v. *Brauer*, 175 Va. 118, 7 S. E. (2d) 93.

For the foregoing reasons, the judgment of the lower court is affirmed.

*Affirmed.*