# Richmond

## Frank Richard Allen, Et Al. v. Samuel A. Brooks.

March 5, 1962.

Record No. 5370.

Present, All the Justices.

*A. Christian Compton (John G. May, Jr.; J. Barrye Wall, Jr.; May, Garrett, Miller, Newman & Compton*, on brief), for the plaintiffs in error.

*Richard L. Williams (Henry H. McVey, III; William F. Watkins, Jr.; Battle, Neal, Harris, Minor & Williams*, on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

Samuel A. Brooks, hereinafter referred to as the plaintiff, brought an action to recover damages for injuries to his person and property alleged to have been sustained when the automobile he was driving was in a collision with a truck owned by the defendants, G. M. Davis and Clarence O. Thomas, and which had been parked on the

highway by the defendant, Frank Richard Allen. A jury trial resulted in a verdict of $5,720.00 in favor of the plaintiff against all three defendants.

The trial court overruled the defendants' motion to set the verdict aside and entered final judgment on the verdict. We granted the defendants a writ of error which presents the following questions for our determination:

(1) Were the defendants guilty of negligence which proximately caused the accident?

(2) Was the plaintiff guilty of contributory negligence as a matter of law?

(3) Did the court err in granting, at the request of the plaintiff, instruction number 1?

(4) Did the court err in permitting the jury, in instruction number 4, to consider the question of permanent injury to the plaintiff?

(5) Was the closing argument of plaintiff's counsel improper?

(6) Was the verdict excessive?

The accident occurred on January 27, 1960, on Third Street in the town of Farmville. Third Street runs east and west and the accident occurred in the block between North Street and Randolph Street. Third Street is straight and level and is 40 feet wide. Parking is permitted on the south side of the street, but prohibited on the north side, thus leaving three lanes for moving traffic. Vehicles were parked in the lane on the south side of the street at the time of the accident.

There was serious dispute among the witnesses concerning the time of the occurrence of the accident. The plaintiff testified that it happened at 6:10 p.m. Other witnesses placed the time from 5:50 p.m. to 6:05 p.m. It was raining at the time, was misty or foggy, and visibility was poor. The sun set on the day of the accident at 5:26 p.m.

The defendant Allen, accompanied by the defendant Thomas, was operating the large tractor-trailer truck, loaded with wood pallets, through Farmville en route to Dillwyn. As the vehicle approached the ultimate scene of the accident, its engine failed and Allen parked the truck on the north side of Third Street, next to the curb, in the no-parking zone, directly under a street light. There were three other street lights in the block where the accident occurred. All the street lights were lighted.

Allen and Thomas attempted to start the truck, but were unsuc-

cessful. They then left the vehicle, unattended and without lights, to go to a nearby garage to telephone the defendant Davis at Dillwyn for assistance. In their absence the accidence occurred. They heard the noise of the impact, returned to the scene, and Thomas turned on the lights of the truck, because he "didn't want someone else piling into it."

The testimony varied as to the length of time the truck was parked prior to the accident. Thomas stated that it had been parked for 10 to 15 minutes; a police officer who testified said that it had been parked for 45 minutes.

Mudflaps were installed behind the rear wheels on each side of the trailer, on each of which were two red reflectors, 8 to 10 inches from the highway surface; there was a red reflector on each side of the bed of the trailer, 4 feet above the level of the highway. Thomas stated that these reflectors were covered with the usual amount of dirt that would be accumulated from a wet road.

On the evening in question the plaintiff, as had been his daily custom for 9 years, left his home in Farmville to go downtown to purchase a newspaper. He testified that in all of his previous trips along the block in question he had never seen any vehicles parked in the no-parking zone.

On his return trip he proceeded westerly along Third Street at a speed of 15 to 18 miles per hour. After passing North Street he met four vehicles proceeding in an easterly direction; three of these vehicles had their headlights dimmed, but the fourth one displayed its high beams.

The plaintiff testified that he was blinded by the headlights of the other vehicles, and especially by those of the last vehicle in line, and that when he switched his own lights to high beam, after passing by the fourth car, he saw the defendants' truck in front of him, in his lane, only 8 to 10 feet away. He immediately applied his brakes, but was unable to stop, and collided with the rear of the truck.

That it was extremely difficult to observe the truck under the circumstances existing on the night in question was corroborated by a witness called by the plaintiff. This witness testified that he was riding in an automobile proceeding westerly on Third Street just prior to the accident; that the lights of two approaching vehicles blinded him; that he was within 30 feet of the parked truck before he saw it although he was looking directly forward, and that the driver of his vehicle had to swerve to the left to avoid a collision.

The first two questions, i. e., those relating to the defendant's negligence and to the plaintiff's contributory negligence, will be discussed together.

The plaintiff is before this Court clothed with a verdict of an impartial jury in his favor. That verdict has been approved by the trial judge who, together with the jury, saw the witnesses and heard them testify.

Since the plaintiff is the successful litigant, the evidence must be viewed in the light most favorable to him. All conflicts in the evidence have, by the jury's verdict, been resolved in the plaintiff's favor. It is incumbent upon us to uphold this verdict unless it is plainly wrong or without credible evidence to support it. *Virginia Beach* v. *Roman*, 201 Va. 879, 881, 882, 114 S. E. 2d 749; *Danner* v. *Cunningham*, 194 Va. 142, 147, 72 S. E. 2d 354.

In this Commonwealth, we follow the salutary rule that questions of negligence and contributory negligence should, if at all appropriate, be left to the determination of the jury. This is because such questions, ordinarily, can only be determined by the sifting and appraisal of facts—matters which are exclusively within the province of the jury. *Steele* v. *Crocker*, 191 Va. 873, 880, 62 S. E. 2d 850; *Va. Elec. & Power Co.* v. *Wright*, 170 Va. 442, 446, 196 S. E. 580.

The trial court is empowered to step in and decide such questions, as matters of law, in a proper situation, thereby withdrawing from the jury any consideration thereof. But this course should be followed by the court only when reasonable men should not differ as to the conclusion to be reached from the facts and where one, and only one, conclusion, as a matter of law, is warranted. *Nehi Bottling Co.* v. *Lambert*, 196 Va. 949, 955, 86 S. E. 2d 156; *Penoso* v. *D. Pender Grocery Co.*, 177 Va. 245, 248, 249, 13 S. E. 2d 310.

Mindful of these principles, we reach the conclusion that, in the case before us, the alleged negligence of the respective parties presented a purely factual situation which was properly left to the jury for its decision.

Whether the defendants were negligent in leaving their truck, unlighted and unattended for as long as 45 minutes in a no-parking zone, in a lane reserved for moving traffic on a rainy, foggy evening, and whether, if such was negligence, it was the proximate cause of the accident, could only properly be determined by the jury. This question has been determined by the jury adversely to the defendants, upon credible evidence, and that finding ought not to be disturbed.

Similarly, it was for the jury to say whether the plaintiff was negligent in failing to see the truck in time to avoid colliding with it. The plaintiff testified that he was driving at a moderate speed; that his windshield wipers were in operation and that his lights were dimmed, as the law required them to be, until after he had passed the line of approaching vehicles; that he was maintaining a proper look-out, and that he did not sooner see the truck because it was unlighted and because he was blinded by the lights of the oncoming vehicles.

The plaintiff's version of the accident is not incredible. Reasonable men might well differ as to whether the plaintiff took all the pre-cautions for his safety required of him by the law. The jury's finding that he did act with reasonable care is not plainly wrong, even though the members of this Court, if sitting on the jury, might have reached a different result.

The defendants rely on the case of *Harris* v. *Howerton*, 169 Va. 647, 194 S. E. 692, as requiring a determination in this case that the plaintiff was guilty of contributory negligence as a matter of law. A recital of the lengthy factual situation in the *Harris* case would unnecessarily prolong this opinion.

The *Harris* case is, upon its facts, in marked contrast to the case before us in the following respects: In that case, the weather was clear on the night of the accident; Howerton's unlighted truck, with which Harris collided, was parked on a street where Harris knew that vehicles were ordinarily parked without lights; Harris presented no evidence to show that the truck was in a no-parking zone; Harris met only one vehicle just prior to striking the truck, and gave conflicting testimony as to whether he was blinded by the lights thereof. This being true, we think the *Harris* case is clearly distinguishable from the case at bar and is not controlling here.

■ The defendants next contend that the court erred in granting instruction number 1, which read as follows:

"The Court instructs the jury that it was the duty of Frank Richard Allen, at the time of the accident in question, to comply with the laws of the Commonwealth of Virginia and the Town of Farmville, in the following particulars:

.   .   .   .   .   .   .   .   .   .   .

"2. Not to park a vehicle in such a manner as to impede or render dangerous the use of the highway by others, except in the case of an emergency or as a result of accident or mechanical breakdown

in such cases, making a report to the nearest police officer as soon as *parctical* and moving the vehicle as soon as possible.

"3. To cause to be displayed upon any vehicle parked or stopped upon the public highway in the Town of Farmville, whether attended or unattended, from one-half hour after sunset to one-half hour before sunrise, one or more lamps projecting a white light visible in clear weather at a distance of 500 ft. to the front of such vehicle and projecting a red light visible under like conditions at a distance of 500 ft. to the rear of such vehicle.

"4. To display upon any vehicle upon the highway in the Town of Farmville, lighted lamps and illuminating *devises* clearly visible in front 500 ft. and in the rear 500 ft. from one-half hour after sunset to one-half hour before sunrise *and at any other time when due to insufficient or unfavorable atmospheric conditions, persons in/or vehicles on said highway are not clearly discernible at a distance of 500 ft.*

"And if the jury believes from a *proponderance* of the evidence that the defendant violated any one or more of these provisions, then he was guilty of negligence; and if the jury believes that such negligence was the sole proximate cause of the accident, then the jury should find for the plaintiff and fix the damages as set forth in other instructions."

Paragraph number 4 of the instruction is based upon Code, § 46.1-268[1] and a similar ordinance of the town of Farmville. Para-

---

[1] § 46.1-268. When lights to be lighted; number of lights to be lighted at any time; use of warning lights.—(a) Every vehicle upon a highway within this State shall display lighted lamps and illuminating devices as required by this article from a half hour after sunset to a half hour before sunrise and at any other time when, due to insufficient light or unfavorable atmospheric conditions, persons or vehicles on the highway are not clearly discernible at a distance of 500 feet.

(b) Not more than four lamps used to provide general illumination ahead of the vehicle, including at least two head lamps and any other combination of fog lamps, passing lamp, driving lamp or other auxiliary lamp approved by the Superintendent shall be lighted at any time. Provided, however, this limitation shall not preclude the display of such warning lights as may be authorized in § 46.1-267, nor such lights as may be authorized by the Superintendent for purposes of identification, other than warning lights.

(c) Vehicles equipped with warning lights authorized in § 46.1-267 shall display such lights at all times when engaged in emergency calls, and if engaged in towing disabled vehicles or in constructing, repairing and maintaining public highways or utilities on or along public highways, such lights shall be displayed during the periods prescribed in paragraph (a).

graph number 3 is based upon Code, § 46.1-276[2] and a similar town ordinance.

The defendants argue that it was improper for the court to include in the instruction the italicized portion of paragraph 4 requiring lights "at any other time when due to insufficient or unfavorable atmospheric conditions, persons in/or vehicles on said highway are not clearly discernible at a distance of 500 ft." They say that Code, § 46.1-268 applies only to vehicles being operated on the highway and not to parked or stopped vehicles; that Code, § 46.1-276 imposes the only obligation for lights on parked vehicles; that this obligation applies only to the period from one half hour after sunset to one half hour before sunrise, and that there is no requirement for lights on parked vehicles at other times in periods of insufficient light or unfavorable atmospheric conditions.

The history of § 46.1-268 and § 46.1-276 is illuminating in our effort to determine the legislative intent.

Code, § 46.1-268, formerly § 46-275, finds its beginnings in Chapter 299 of the Acts of Assembly of 1906, where it was provided that, "every machine operator in this State shall have displayed from one hour after sunset to one hour before sunrise" certain lights therein prescribed.

In 1910, Chapter 326, § 13, Acts of Assembly, provided that, "every machine operated in this State shall have displayed" the required lights during the period of nightfall.

In 1932, sweeping revisions were made to the motor vehicle code in the enactment of Chapter 342, Acts of Assembly. Section 94(k), page 661, which later became § 46-275 of the Code of 1950, provided that, "if the natural light is insufficient to enable the operator of a vehicle to discern an object at a distance of 300 feet the lamps in this section respectively required for different classes of vehicles shall be lighted."

It is significant to note that the words "operator" and "operated", one or the other of which is found in all of the former sections, are conspicuously absent from the 1958 enactment of § 46.1-268.

---

[2] § 46.1-276. Lights on parked vehicles.—Whenever a vehicle is parked or stopped upon a highway, whether attended or unattended, during the period from a half hour after sunset to a half hour before sunrise there shall be displayed upon such vehicle one or more lamps projecting a white or amber light visible in clear weather from a distance of five hundred feet to the front of such vehicle and projecting a red light visible under like conditions from a distance of five hundred feet to the rear, except that local authorities may provide by ordinance that no lights need be displayed upon any such vehicle when parked in accordance with a local ordinance.

Thus it will be seen that prior to the 1958 revision the legislature placed emphasis upon the *operation* of a vehicle as a basis for the requirement for lights, with the time they were required being set either by a fixed period with relation to sunrise and sunset or, as in the 1932 revision, left to the judgment of the operator.

However, in the 1958 act, the emphasis is placed upon the fact of a vehicle being *"upon the highway"* as the basis for lights being required, with the time factor being determined both in relation to sunrise and sunset and the lack of proper visibility, at other times, due to insufficient light or unfavorable atmospheric conditions.

It is worthwhile to note that subsection (c) of § 46.1-268 requires that certain warning lights be displayed on the vehicles listed therein at other times than the one half hour after sunset to one half hour before sunrise period, when such vehicles are *engaged* in the activities listed in the subsection. Such vehicles may be just as much engaged in the listed activities when parked or stopped upon the highway as they are when actually in operation thereon.

Code, § 46.1-276 was first enacted when the motor vehicle code was revised in 1932. It is now in substantially the same language as originally enacted, except for minor changes which are unimportant to the issue before us.

It is true that, with relation to vehicles parked or stopped on the highway during the period from one half hour after sunset to one half hour before sunrise, § 46.1-268 and § 46.1-276 are overlapping. However, the provisions of the one section are not inconsistent with the provisions of the other. The duties imposed by § 46.1-268 are all-encompassing, and while § 46.1-276 might well have been merged with § 46.1-268 into one section in the 1958 revision, the failure of the legislature to do so does not negate any of the duties provided by both sections.

We therefore determine that it was the legislative intent, in the enactment of § 46.1-268, to require that lamps and illuminating devices be lighted on a vehicle upon a highway whether in operation or parked or stopped, and that this requirement is effective not only during the period following sunset and before sunrise but at any time when, due to insufficient light or unfavorable atmospheric conditions, persons or vehicles on the highway are not clearly discernible at a distance of 500 feet. However, local authorities are authorized, by § 46.1-276, to provide by ordinance that no lights need be displayed upon any such vehicle when parked in accordance with the

local ordinance. It does not appear, from the record, that the town of Farmville has adopted such an ordinance.

It was not error for the trial court to include, in instruction number 1, the provisions of Code, § 46.1-268 and the similar Farmville ordinance.

■ The questions relating to instruction number 4, which permitted the jury to consider whether the plaintiff had suffered permanent injury, and to the alleged excessiveness of the verdict, will be discussed together.

The plaintiff, a retired shoemaker, was 68 years of age at the time of the trial on November 30, 1960. As a result of the accident he suffered three fractured ribs and cuts and bruises on his face, arms and legs. While in the hospital for treatment he developed pneumonia in both lungs, as a result of his injuries. He experienced considerable pain from the injuries, was hospitalized for three weeks and then confined to his home for an additional five weeks.

The hospital and doctors bills incurred by the plaintiff totalled $532.00. Damage to his automobile was estimated to be $170.00.

The physician who treated the plaintiff testified that, as of the time of trial, his patient had not completely recovered from his injuries, that he still suffered from weakness, had pain in his right leg and was much more nervous as a result of the injuries.

The doctor further testified that the plaintiff's general physical and nervous condition was not as good as it was before the accident, but that the plaintiff had recovered as much as he would ever recover.

Under these circumstances, the trial court properly submitted to the jury the question of whether the plaintiff had suffered a permanent injury as a result of the accident, and correctly permitted the jury to award damages therefor, if it so found.

The test, in a negligence case, as to whether or not a party has suffered a permanent injury is: Will he be cured of the injury? If he will, then the injury is temporary; if he will not, it is permanent, and if it has some disabling effect, the injured party is entitled to compensation for such permanency from the person liable for the damage. *MacDonald* v. *Firth*, 202 Va. 900, 904, 121 S. E. 2d 369.

In the case before us, the plaintiff's injuries resulted in continuing weakness, pain and nervousness. The effect of the physician's testimony is that the plaintiff would not be cured of these residual effects of the injuries. The test of permanency, is, therefore, properly met by the evidence.

■ We are of the opinion that the testimony concerning the plaintiff's injuries is amply sufficient to sustain the amount of the verdict. The size of the verdict is not so great as to shock the conscience of the court. The amount returned does not suggest that the jury held any bias or prejudice for or against either side to the litigation, nor is it so out of proportion to the plaintiff's injuries as to make it appear that the jury misconceived or misconstrued the facts. Accordingly, the jury's determination of what was fair compensation cannot be disturbed. *Dinwiddie* v. *Hamilton*, 201 Va. 348, 352, 353, 111 S. E. 2d 275; *Farish & Co.* v. *Reigle*, 11 Gratt. (52 Va.) 697, 722.

■ The defendants finally contend that the trial court erred in permitting plaintiff's counsel to argue improperly to the jury.

During the course of his closing argument to the jury, plaintiff's counsel asked the jurors, "How many of you have had the experience when you ride down—?" Defense counsel thereupon interrupted the argument and objected thereto. The objection was overruled, and the defendants excepted. No motion for a mistrial was made for what had been said.

Since it does not appear, from the record, that plaintiff's counsel ever completed his question or further pursued his line of argument, after the objection was made, the action of the judge in overruling the objection was harmless error if, indeed, it was error at all.

We find no error in the record of the proceedings in the trial court. The judgment will, therefore, be

*Affirmed.*