## Richmond

## GOVERNMENT EMPLOYEES INSURANCE COMPANY IN THE NAME OF JOHN DOE

### V.

## ALMA M. GALLOP AND JOHN H. JAMES

January 21, 1983.

Record No. 801471.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson, and Stephenson, JJ., and Harrison, Retired Justice.

*Benjamin P. Lynch, Jr. (Taylor, Gustin, Harris, Fears & Davis*, on briefs), for appellant.
*George H. Gray (Outland, Gray, O'Keefe and Hubbard*, on brief), for appellees.

HARRISON, R.J., delivered the opinion of the Court.

Alma M. Gallop alleged that she sustained personal injuries as a result of the negligence of John H. James and John Doe when, in the operation of their motor vehicles, a Pontiac automobile of James was caused to collide with a Buick automobile operated by Gallop.

Upon a trial of the case, and after the introduction of all evidence, the trial court, upon the motion of James, and over the objection of Gallop, entered summary judgment in favor of James. Upon motion of Gallop, the court entered summary judgment

against Doe as to liability and submitted the question of damages to the jury, which returned a verdict for Gallop in the amount of $10,000. The court denied Doe's motion to set the verdict aside and to grant him a new trial on the grounds that the verdict is contrary to the law and evidence, is excessive, and "for errors of the court."

Government Employees Insurance Company, in the name of John Doe, has appealed, alleging that the court erred in denying the jury the opportunity to rule on the negligence of the defendants, James and Doe, and in refusing an instruction it offered.

On September 28, 1977, about 11:30 p.m., Alma M. Gallop, an employee in the Norfolk Office of the Chesapeake and Potomac Telephone Company, was injured in an automobile accident which occurred while she was en route to her home in Portsmouth via the Downtown Norfolk-Portsmouth Tunnel. She was traveling in a westerly direction, had traversed and just exited the Portsmouth side of the Tunnel, and intended to continue west on Interstate Highway 264. At a point near the Portsmouth entrance to the Tunnel, the eastbound and westbound lanes are separated by a concrete median four to five inches in height. Eastbound traffic entering the Tunnel from Interstate 264 continues in a straight direction using Ramp I. Eastbound traffic entering the Tunnel from Court Street in Portsmouth uses Ramp B and merges to its left with traffic using Ramp I. Before reaching the Tunnel, traffic from both ramps merges into a single lane about 150-200 feet east of the point where the accident occurred. Gallop said she was traveling at a speed of approximately 30 mph when she exited the Tunnel and observed the lights of an automobile, which was operated by James, approaching her in its proper (eastbound) lane on I 264 (Ramp I), two or three car lengths away. She testified that she saw no other vehicle in the vicinity. She said she "heard his brakes and zoom he was coming straight at me" and that "[h]is lights were in my eyes like Portsmouth lite up and I couldn't see anything but lights coming at me."

The evidence established conclusively that Gallop was free of negligence which contributed to cause the accident. The undisputed testimony of the police officer investigating the accident was that a Pontiac automobile operated by James crossed over the median strip and struck the Buick automobile operated by Gallop. The issues are whether James so negligently operated his vehicle as to cause him to deviate from his proper lane of travel and cross

the median strip, or whether, without negligence on his part, he was forced across the median strip into Gallop's lane by the unknown driver (John Doe) of another vehicle, or whether the negligence of both James and Doe contributed to cause the accident.

James was en route on I 264 to his place of employment at the Ford Motor Company plant in Norfolk. He testified that as he approached the Portsmouth entrance to the Downtown Tunnel he slowed down to about 30-35 mph and looked to his right for cars that might be approaching the entrance on Ramp B. He said that at first he saw none approaching, but when he reached a point "just about where the guard shack is at, then I saw this car coming in from my right at a high rate of speed." James stated he first saw the allegedly speeding John Doe vehicle when it was about 30 feet away. He said he became alarmed when the car appeared to be crossing over into his lane, and "I hit the brakes and started blowing my horn." James testified he lost control of his car and believes this occurred because the Doe car struck his vehicle "[s]omewhere in the front . . . around the front bumper. The front fender." James said the bumper of his car was "peeled back."

Officer Dwaine B. Weeks, Sr., testified to finding 50 to 60 feet of skidmarks, "solid rubber," made by the James car in the eastbound lane "about where the point of Ramp B and I are" and leading across the median strip.

Steven W. Brock was on duty at the Tunnel at the time and witnessed the accident. He was called by the plaintiff and testified that he was standing by a building, which he identified as the "jeep shack," located on the south side of Ramp B facing the two ramps as they descend toward the Tunnel. He capsuled what happened as follows: "Mr. James was coming off the interstate [I 264] and an unknown vehicle [the John Doe car] was coming from behind the jeep shack [on Ramp B] and forced Mr. James over to the side where he hit the curb and it resulted in a head-on collision."

Brock said that Gallop was at all times in her proper lane and that when the James vehicle went into or against the curb it "flew up in the air and hit her head-on." This witness described the John Doe vehicle as a maroon car, 1972 to 1974 model, and he believed it was a Monte Carlo. He said the vehicle did not stop but proceeded into the Tunnel. Its driver remains unknown. In describing the movement of the John Doe car as it approached the

Tunnel on Ramp B, preparatory to merging with traffic from I 264 on Ramp I, Brock testified: "Well, I heard the car coming from behind me and winding up. I seen too many accidents. You can hear them when they are coming around. I heard the car coming behind me and I automatically looked up the intersection to see what was coming and it was just about over with by then." When asked what he meant by "winding up," he responded "steadily accelerating."

Brock explained that there is a safety or emergency zone, marked by white painted diagonal lines, which separates the two merging ramps for some distance prior to their actual merger. He said that as the John Doe car approached the point where the two ramps merged, "it was sliding . . . it slid over to the emergency lane that we have there," that it continued right across the safety zone and forced the James car out of its lane, that the car was "leaning" while "in the slide." Brock further testified that the Doe car was just about ready to cross the safety zone when James "started applying his brakes" and that when this happened, the James car "skidded sideways" and hit the median strip and "went into the air completely."

■ The principles which control our decision here are well-stated in *Allen* v. *Brooks*, 203 Va. 357, 361, 124 S.E.2d 18, 21-22 (1962), where the Court held:

> In this Commonwealth, we follow the salutary rule that questions of negligence and contributory negligence should, if at all appropriate, be left to the determination of the jury. This is because such questions, ordinarily, can only be determined by the sifting and appraisal of facts—matters which are exclusively within the province of the jury. [Citations omitted]
>
> The trial court is empowered to step in and decide such questions, as matters of law, in a proper situation, thereby withdrawing from the jury any consideration thereof. But this course should be followed by the court only when reasonable men should not differ as to the conclusion to be reached from the facts and where one, and only one, conclusion, as a matter of law, is warranted. [Citations omitted]

*Accord, Meador* v. *Lawson*, 214 Va. 759, 204 S.E.2d 285 (1974).

While a jury may agree with the trial judge that a preponderance of the evidence here is that the James vehicle was forced into Gallop's lane of travel because of the sole negligence of John Doe, we cannot say as a matter of law that this is the only factual conclusion that can be reached from the evidence. "Summary judgment shall not be entered if any material fact is genuinely in dispute." Rule 3:18.

James' explanation of his presence in Gallop's lane of travel is that, without negligence on his part, he was suddenly forced to take evasive action to avoid contact with another automobile and that in so doing he lost control of his vehicle. There is credible evidence that there was in fact an automobile, operated by an unknown driver who did not stop, which slid across the safety zone as it came off Ramp B into the lane in which James was traveling, and struck, or nearly struck, the James vehicle. While the accident did not occur at an intersection, within the meaning of Code § 46.1-1(11), as Doe contends, it did occur at a point where the two ramps merge. Under these conditions, both drivers had reciprocal duties, in the exercise of ordinary care, and in compliance with the statutes, to drive at a reasonable and lawful speed, to maintain proper control over their vehicles, and to maintain a proper lookout for other cars that might be merging at that point.

James also testified that he believed the Doe car struck his vehicle and caused him to lose control of it. Brock testified that there was no contact between the vehicles of James and Doe.

Doe contends that James was operating his vehicle at an excessive speed, citing the extensive damage to the Gallop and James vehicles, and the testimony that the James vehicle, after the application of brakes for some 50-60 feet, "flew in the air" and struck the oncoming Gallop car. When asked if his car went completely in the air, James said: "Well, in my opinion, I would have had to be traveling at a high rate of speed for my car to ever went in the air and been airborne, more than 35 miles an hour any way." James disagreed with the testimony that his car was ever airborne and did not remember whether it skidded sideways as Brock stated.

A jury might conclude that had James maintained a proper lookout he would have seen the Doe car on Ramp B before it was only thirty feet away and in time to slow down or stop his vehicle without losing control thereof. Both drivers, James and Doe, had a duty to keep a proper lookout and exercise proper control over

their vehicles, commensurate with other traffic and conditions which they observed, or in the exercise of reasonable care should have observed.

The issues of negligence and proximate cause raised questions of fact which should have been submitted to a jury.

■ We find no merit in James' contention that appellant was without standing to appeal the case. James says, first, that the plaintiff did not object to the action of the trial court in striking her evidence as to James and, second, that Doe should not be heard to complain of a ruling against another party, the plaintiff. The record demonstrates, however, that counsel for Doe, both after the trial court sustained the motion to strike and during argument of the motion to set aside the verdict, voiced objection to the failure of the trial court to submit the liability issue to the jury. In addition, defendant Doe manifestly was aggrieved, within the contemplation of Code § 8.01-670, by the court's action in erroneously eliminating a co-defendant who could be held jointly liable with Doe to the plaintiff.

In view of our decision, it is unnecessary that we discuss appellant's assignment of error which questions the failure of the trial court to instruct the jury that the mention by counsel of the amount Gallop sued for is not evidence in the case and should not be considered by the jury in arriving at its verdict. We do invite attention to *Phillips* v. *Fulghum*, 203 Va. 543, 546-47, 125 S.E.2d 835, 837-38 (1962).

Accordingly, and for the reasons stated, the judgment of the lower court is reversed, and the case is remanded for a new trial on all issues as to both defendants, John H. James and John Doe.

*Reversed and remanded.*