**Robert E. KILMER, Plaintiff,**

v.

**RYDER INTEGRATED LOGISTICS, INC., Defendant.**

**Civil Action No. 5:99cv30013.**

United States District Court, W.D. Virginia, Harrisonburg Division.

Nov. 8, 1999.

John P. Cattano, Charlottesville, VA, for Plaintiff.

Frank N. Cowan, Cowan & Owen, P.C., Richmond, VA, for Defendants.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

On August 11, 1999, the presiding United States Magistrate Judge filed a Report and Recommendation regarding the above-captioned case in accordance with an Order by the court directing the Magistrate to conduct such proceedings as he may deem appropriate and to submit to the court proposed findings of fact and recommendations for the disposition of this case pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate recommended to the court that the defendant's motion for summary judgment seeking dismissal of the action under the bar of Virginia's Workers Compensation Act be denied. The defendant objects to the Report and Recommendation on the grounds that the Magistrate Judge failed to properly apply Virginia law. Under § 636(b)(1)(C), this court "shall make a de novo determination of those portions of the report ... to which the objection is made." Having thoroughly considered the issue, the court sustains the defendant's objection to the Report and Recommendation.

### I.

Plaintiff Robert E. Kilmer filed a complaint against defendants Ryder Integrated Logistics, Inc., Ryder Truck Rental, Inc., Ryder Dedicated Logistics, Inc., Ryder Driver Leasing, Inc., Ryder Services, Inc., Ryder TRS, Inc., Ryder Transportation Services and James Eller on February 23, 1999. On March 1, 1999, the plaintiff amended the complaint adding as defendants Ryder/ATE, Inc., Parrish Tire Company, Inc. and Parrish Tire Company. Jurisdiction is invoked pursuant to 28 U.S.C. § 1332 and the Virginia Long-arm statute, Va. Code § 8.01–328.1(A)(1), insofar as each of the defendants conducts business in the Commonwealth of Virginia, and otherwise the cause of action accrued in the Commonwealth.[1]

The plaintiff was employed by the Hershey Tire Company ("Hershey"). Hershey is primarily engaged in the retail sale of tires which are generally purchased from defendant Parrish Tire Company ("Parrish") and a few other tire companies.[2] Defendant Ryder Integrated Logis-

---

1. The amount of damages sought by the plaintiff exceeds $75,000, and there is complete diversity of citizenship among the parties to this action.

2. Hershey also sells a few tractor-trailer tires, similar to the one that rolled over onto the plaintiff, for wholesale.

tics ("Ryder") delivers these tires for Parrish. Defendant Eller is a truck driver for defendant Ryder.

The plaintiff's primary responsibility at Hershey involved managing the sales office area. However, he also performed other miscellaneous tasks and duties to assist the office and shop, including helping truck drivers unload their shipments of tires. On March 3, 1997, defendant Eller delivered several tires from defendant Parrish to Hershey. The plaintiff was injured while unloading the delivery.

A discrepancy exists regarding whether the unloading is done as a team or whether the employees are following separate and distinct responsibilities under their prospective employment. According to the plaintiff's deposition, the unloading is generally done in tandem. The truck driver would roll the tires to the back of the tractor-trailer, wait for the plaintiff to reach up for the tire denoting acceptance and together they would roll the tire to the ground with the plaintiff controlling it as it landed. (Pl.'s Dep. at 20–26.) According to the defendant's cross-examination in his deposition, the unloading was always done with at least two people with separate and distinct responsibilities; "It was [his] job to get that tire to the back of the truck, and it was their job to take it from there." Defendant Eller went on to say that once he "dropped it off over the side, it was their tire. They took it and did what they wanted to with it." However, he did agree that it was a joint unloading venture. (Df.'s Dep. at 81.)

On the day of the accident, defendant Eller arrived at Hershey before the store opened. The plaintiff was already in the office and agreed to help Eller unload the tires. The plaintiff-defendant team successfully unloaded a half dozen or so tires from the tractor-trailer to a pick-up truck following the standard procedure. They then proceeded to unload the tires from the tractor-trailer to the ground.

The plaintiff alleges in his complaint that defendant Eller prematurely and awkwardly released a large tire unguided by the plaintiff which went out of control and forced him to the hard pavement. However, in his deposition, the plaintiff recalls helping defendant Eller roll the tire off the bed of the truck, but immediately realizing the tire had a different characteristic-allegedly much stiffer-than the other tires. Apparently, the tire did not bounce as the others had, but instead rolled on its edge towards the plaintiff. In response, the plaintiff attempted to backpedal, but fell backwards with the tire toppling on him. Defendant Eller had not seen the accident as he was getting ready to lower another tire. When he looked up he saw the plaintiff lying on the ground with the tire on top of him. As a result of the accident, the plaintiff suffered injuries requiring brain surgery and damaging the left side of his body.

The complaint alleges the defendants, in particular defendant Eller, breached their duties of care owed to the plaintiff "by carelessly, negligently, and recklessly pushing [a] huge tire in such a manner that it recklessly and awkwardly landed on the ground forcing Kilmer to the pavement." (Pl.'s Am. Compl. ¶ 12). The plaintiff requests a judgment against the defendants, jointly and severally, for compensatory damages in the amount of twenty million dollars ($20,000,000).

Defendant Eller and the Ryder defendants separately answered the complaint on March 18, 1999, both admitting some of the factual allegations in the complaint, but denying defendant Eller breached any duty owed to the plaintiff that entitled Kilmer to recover any sum of money from the defendants. The defendants further put forth the defenses of contributory negligence and assumption of the risk. Also, they challenged this court's jurisdiction based on the exclusive remedy provision of the Workers' Compensation Act (the "Act").

## II.

Summary judgment is appropriate only if there is no genuine issue as to any

material fact and the moving party is entitled to summary judgment as a matter of law. *See* F.R.Civ.P. 56(c). The facts must be viewed in the light most favorable to the plaintiff when the defendant has moved for summary judgment. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Charbonnages de France v. Smith*, 597 F.2d 406 (4th Cir.1979). The movant has the burden of showing the absence of evidence to support the non-movant's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393–394 (4th Cir.1994).

■ Under Virginia law, an employee injured in the course of his employment is limited to a recovery from his employer under the Workers' Compensation Act as the Act "exclude[s] all other rights and remedies of such employee ... at common law or otherwise." Va.Code Ann. § 65.2–307 (West 1999). However, an exception exists for third party liability when the employee's injury results from "the negligent act of a party who is a stranger to the trade, occupation, or business of his employer." *Conlin v. Turner's Express, Inc.*, 229 Va. 557, 331 S.E.2d 453, 455 (1985); *see also* Va.Code Ann. § 65.2–800(A) (West 1999) (stating the employer or "those conducting his business shall only be liable to the employee for personal injury ... by accident to the extent and in the manner herein specified"); Va.Code Ann. § 65.2–800(C) (West 1999) (defining 'those conducting his business' as "any person whose act results in an injury ... compensable under this title and arises out of and in the course of employment by an employer who is or may be liable for the payment of compensation" and determining that a person who is not a employer and does not fall into this category is considered an "other party"). Whether a defendant is performing the employer's trade, occupation or business "depends upon the facts and circumstances in each case, and for that reason the question does not readily yield to categorical or absolute standards." *Con-*

*lin*, 331 S.E.2d at 454 (quoting *Bassett Furniture v. McReynolds*, 216 Va. 897, 224 S.E.2d 323, 326 (1976)).

In general terms, if the defendant is "engaged at the time of the injury in the business of the injured party's employer, then that employer will be liable for compensating the injured employee under the terms of the Act." *Wood v. Joyce*, 972 F.2d 345, 1992 WL 189488, at *1 (4th Cir.1992). However, if the defendant is not performing the employer's duties, he shall be considered an "other party" and be liable for the plaintiff's injuries. *See id.*

■ The plaintiff cites *Hipp v. Sadler Materials Corp.*, 211 Va. 710, 180 S.E.2d 501 (1971), to determine whether defendant Eller was an "other party." In *Hipp*, the plaintiff's employer contracted with the defendant for the delivery of concrete to be poured into forms and footings; however, the defendant was only responsible for the delivery and pouring and not the spreading of the concrete. *See id.* at 501. One of the defendant's employees was performing the obligations under the contract when his truck struck the plaintiff. *See id.* The court determined that because the contract only provided for the delivery and pouring, the defendant's employee never engaged in the trade, business or occupation of the plaintiff's employer; rather, the employee was merely performing the last act of the delivery. *See id.* at 502. As a result, the Act did not bar the plaintiff's common-law action against the defendant.

The plaintiff further cites *Burroughs v. Walmont, Inc.*, 210 Va. 98, 168 S.E.2d 107 (1969), to support the idea that a delivery man is a "other party." In *Burroughs*, the defendant purchased sheet rock from the plaintiff's employer. As part of the purchase contract, the plaintiff agreed to carry the sheet rock to specific rooms in the home. *See id.* at 108. While the plaintiff was carrying the sheet rock into the home, he fell down an open stairwell and sustained numerous injuries. *See id.* The court recognized that the supplier/deliverer of materials or items are in some way

almost always involved in the purchaser's trade, occupation or business. However, "a line must be drawn to determine who is an 'other party' for the purposes of the Workers' Compensation Act. And persons who function solely as suppliers and deliverers of goods have been held 'other parties.'" *Id.* Here, the stacking of sheet rock in the specific rooms constituted the final act of delivery and not construction. As such, the plaintiff's case was not dismissed.

The Magistrate Judge was persuaded by both *Hipp* and *Burroughs* among other cases in recommending that the defendant's summary judgment motion be denied. The Magistrate felt that these cases created a clear distinction between those individuals delivering goods and those receiving them and further determined the proper way to treat each category. The Magistrate found that the plaintiff was performing the distinct act of receiving which the defendant could not partake in. As a receiver, the plaintiff was not engaging in the trade, business or occupation of the defendant. However, the proper test is whether defendant Eller was engaged in the trade, business or occupation of Hershey. *See Floyd v. Mitchell,* 203 Va. 269, 123 S.E.2d 369, 372 (1962); *Wood,* 972 F.2d 345, 1992 WL 189488, at *1. This court relies on several Virginia cases to determine that the defendant was more than just a deliveryman, and thus, actively participated in Hershey's business.

In *Stout v. Onorati,* 221 Va. 143, 267 S.E.2d 154 (1980), the decedent plaintiff was a truck driver for a private carrier of goods who was hired by a manufacturer to haul a load of heavy equipment to a storage site. *See id.* at 155–56. The manufacturer previously entered into a verbal contract with the storage facility where both parties would participate in the unloading process. *See id.* at 155. The storage facility employees heavily relied on the truck drivers hired by the manufacturer to assist in unloading the equipment, mostly because "they loaded it, and, so, they knew how to unload (the freight)." *Id.* at 156. Because of this contract, the court determined the truck drivers were performing work that was part of the storage facility's trade, business or occupation. *See id.* at 157. The court found the agreement to unload was not incidental to storing the machinery, but rather, the provision was agreed upon in order to assure the deliverymen would not have to unload the truck by themselves. *See id.* at 158. As a result, the truck drivers were not considered to be an "other party" and could not he held accountable when they caused an injury, nor could they sue any of the storage facility employees who injured them under a common law claim.

The record does not indicate whether there was a verbal contract between Hershey and Parrish/Ryder for the unloading of tire deliveries. However, there definitely seems to be an industry practice. In both the plaintiff's and defendant Eller's depositions they admitted following the same procedure not just when dealing with one another, but also in receiving deliveries from other truck drivers and in delivering tires to other purchasers. Both parties agreed that the procedure was a joint venture and that they rarely saw a truck driver unload the tractor-trailer by himself. Hershey and Parrish/Ryder may not have entered into a contract dealing with unloading procedures because of their reliance that the industry practice would be followed. Ergo, there appears to be an unspoken contract for unloading tires. Accordingly, the ruling in *Stout* applies and the Workers' Compensation Act bars the plaintiff's claim.

Another instance where the court found the defendant to be more than a deliveryman is in *Bosher v. Jamerson,* 207 Va. 539, 151 S.E.2d 375 (1966). In *Bosher,* the plaintiff's employer hired the defendant to deliver a load of sand to the work site where he would follow the employer's directions as to where to dump and spread the sand. *See id.* at 376. The court determined that because the defendant was required to follow the specific instructions of the purchaser's employee, the defendant

was performing the trade, occupation or business of that employer. *See id.*

Likewise, in defendant Eller's deposition he admitted he was required to follow the instructions of the purchaser whenever unloading tires from the tractor-trailer. However, he qualified that statement by declaring if the purchaser requested him to unload the truck by himself, he would not do it. This limitation may place some boundaries on the instructions the truck driver must follow; however, he did follow Hershey's orders regarding what type of tires and how many were to be dropped into the pick-up rather than the ground. Thus, defendant Eller is more than a mere delivery man.

This court is further persuaded by the line of cases where plaintiffs' claims are permitted to go forward because there is no agreement between the parties to work in tandem. In *Stevens v. Ford Motor Company,* 226 Va. 415, 309 S.E.2d 319 (1983), the plaintiff was a truck driver who delivered automobile parts to Ford. *Id.* at 321. Unloading the parts was the sole responsibility of Ford's employees. *See id.* at 322. The Virginia Supreme Court decided that because the plaintiff was not required to unload or to help unload the shipment, he was not engaged in Ford's trade, business or occupation, and thus, could maintain an action against Ford. *See id.; see also Buffalo Shook Co. v. Barksdale,* 206 Va. 45, 141 S.E.2d 738 (1965).

The present case can be distinguished from *Stevens* in that it was common practice for the deliverer and a Hershey employee to work together in unloading the tires. The Magistrate Judge admitted as much when he stated that the unloading in this case was done in tandem. Thus, because the defendant was expected to help unload the delivery, he was engaged in Hershey's trade, business and occupation.

### III.

This case revolves around the distinction of whether defendant Eller, in rolling the tire off the edge of the tractor-trailer, was performing the last act of delivery or was engaging in Hershey's trade, occupation or business. The Magistrate believed the defendant was performing the last act of delivery. However, several facts combined together establish he was actually much more.

As in *Stout* and *Bosher,* the defendant was performing a joint venture. He worked with a Hershey employee, the plaintiff, to determine what tires went where. Further, he had to wait for the plaintiff in order to drop the tire off the tractor-trailer. In defendant Eller's deposition, he admitted never dropping the tire until the plaintiff gave him some acknowledgment that he was ready to help guide the tire. As such, this was a joint effort which is a stark contrast with both *Hipp* and *Burroughs*-the cases cited by the plaintiff. In *Hipp,* once the deliveryman poured the concrete into its forms and footings his responsibilities were finished. He did not help the purchaser's employees spread the concrete or in any other way work jointly with the other employees. In *Burroughs,* the deliveryman unloaded his truck and carried the sheet rock to the specific rooms by himself. He, too, did not have any help from the purchaser's employees.

Because of the joint effort between the plaintiff and the defendant in unloading the tires and the fact that defendant Eller was required to follow the instructions of Hershey's employees when unloading a tire shipment, this conduct is considered part of Hershey's trade, occupation or business. As a result, the plaintiff's claims are barred based on the exclusive remedy provision of the Workers' Compensation Act.

An appropriate order this day shall issue.

### FINAL ORDER

By Order dated April 8, 1999, this court referred the above-captioned case to the presiding United States Magistrate Judge, to conduct proceedings appropriate for the resolution of dispositive pretrial matters

and to submit to this court proposed findings of fact and recommendations for their resolution pursuant to 28 U.S.C. § 636(b)(1)(B). On August 11, 1999, the Magistrate Judge filed his Report and Recommendation suggesting that this court deny the defendant's motion for summary judgment.

The defendant filed an objection to the Report and Recommendation on August 23, 1999, and the plaintiff filed a response to the objection on September 3, 1999. Under § 636(b)(1)(C), this court "shall make a de novo review determination of those portions of the report ... to which the objection is made." After a thorough examination of the defendant's objection, the supporting memoranda, the applicable law, the documented record, and the Report and Recommendation, this court sustains the defendant's objection and decides not to adopt the Magistrate Judge's recommendation. For the reasons stated in the accompanying Memorandum Opinion, it is this day

ADJUDGED AND ORDERED that:

1. The defendant's August 23, 1999 objection to the Report and Recommendation of the United States Magistrate Judge is SUSTAINED.

2. The defendant's June 15, 1999 motion for summary judgment shall be, and hereby is GRANTED. Accordingly, the case shall be stricken from the court's docket with prejudice.

The Clerk of the Court is hereby directed to send a certified copy of this Order to Magistrate Judge B. Waugh Crigler and to all counsel of record.