# Richmond

## Buffalo Shook Company, Incorporated, Et Al. v. Charlie Barksdale.

April 26, 1965.

Record No. 5895.

Present, All the Justices.

*E. Ballard Baker* (*Wicker, Baker & Goddin,* on brief), for the plaintiffs in error.

*Parker E. Cherry* (*Purcell, House & Cherry,* on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Charlie Barksdale, plaintiff below, brought this action against Buffalo Shook Company, Inc., and its employee, Thomas Henry Brown, defendants, for damages for personal injuries. A jury returned a verdict in his favor for $17,000, on which the court entered judgment, and the defendants have appealed. They contend that (1) the exclusive remedy of plaintiff was under the Workmen's Compensation Act; (2) the plaintiff assumed the risk; (3) the court erred in refusing their Instruction D, and (4) in permitting the pleadings to be taken into the jury room.

The plaintiff was a truck driver employed by Glen H. Bolt, a sawmill operator. Buffalo Shook was engaged in manufacturing tobacco hogsheads and pallets from lumber purchased by it from Bolt and others. In September 1961 the plaintiff drove a truck loaded with lumber sold by Bolt to Buffalo Shook to the latter's place of business in Farmville. The lumber was laid on the flat bed of a truck on cross pieces so that the fork lift used for unloading could get under it. The fork lift was a tractor type vehicle with four wheels owned by Buffalo Shook and on this occasion operated by its employee Brown, one of defendants. It was equipped with a lifting device at its front end, designed for lifting the lumber off the truck and carrying it to the desired place. On the rear end of the fork lift was a metal block to serve as a counter-balance to the weight of the lumber on the fork lift at the opposite end. If the fork lift was overloaded it would cause the rear end to fly up. As one of plaintiff's witnesses described it, "If it is overloaded, it rares up."

It was the duty of Buffalo Shook to unload the lumber from the truck. Its president so testified. He said the truck drivers unchained the load on their trucks, which was the extent of their assistance, and they were not needed in any other way.

The evidence, as the jury could view it, was that on this occasion plaintiff had taken the chain off his load of lumber and Brown, the

fork lift operator, proceeded to unload one side of the truck. Plaintiff then moved his truck so the lift could unload the other side. The lift had not taken half the lumber the first time and when the lifting forks were inserted under the lumber on the other side, the operator had difficulty in lifting it. He directed the plaintiff and another man to get on the lift and the plaintiff got on the rear, the other man on the side. The lift operator then renewed his efforts, "made a couple of jerks" and succeeded in moving the load clear of the truck, but when he did so the front end of the lift went down and the rear flew up, carrying the plaintiff with it. When the loaded lift struck the ground the rear end dropped, striking the plaintiff and causing painful and serious injury to his leg.

In April 1962, the plaintiff, as Bolt's employee, received an award from the Industrial Commission under the Workmen's Compensation Act for the injuries received in this accident. The defendants contend, as stated, that plaintiff has no other remedy because neither of the defendants is an "other party" against whom the Workmen's Compensation Act preserves a right of action for damages.

The Compensation Act provides, Code § 65-38, 1964 Cum. Supp., that the making of a lawful claim against the employer under the Act operates as an assignment to the employer of the employee's right to recover damages "against any other party" and the employer may enforce the right in his own or the employee's name. The amount collected by the employer in excess of the amount paid by him is for the benefit of the employee, subject to the provisions of §§ 65-39 and 65-39.1 of the Code.

The evidence shows that the plaintiff was the employee of Bolt, was paid by Bolt and was subject to the orders of Bolt. He was not employed by Buffalo Shook, received no compensation from it and was subject to no control by it. He was not required by his employer to assist in unloading the lumber and owed no duty to Buffalo Shook to give such assistance. His only instruction from Bolt was to get the truck back as soon as he could. It was customary, Bolt said, for the driver of the truck to give a hand in unloading it, and the plaintiff testified that it was part of his job to help unload. But he could have meant only that it was part of his job with Bolt. Bolt and the president of Buffalo Shook both testified that the plaintiff had no duty to help unload.

Defendants argue that defendant Brown and plaintiff Barksdale were both engaged in work which was part of the business of both Bolt and Buffalo Shook, and hence Barksdale could not maintain this

action against Buffalo Shook under our holding in *Floyd, Adm'x* v. *Mitchell,* 203 Va. 269, 123 S.E.2d 369.

There Floyd, an employee of Glamorgan, whose business was manufacturing and selling pipe, was killed by a tractor-trailer operated by Mitchell, an employee of Powell, who had the contract to haul the pipe manufactured and sold by Glamorgan to its customers. Floyd's administratrix received an award under the Compensation Act as an employee of Glamorgan. We held that she could not also maintain an action for damages against Mitchell and Powell because they were engaged with Floyd in work that was part of the trade, business or occupation of Glamorgan, and were not other parties or strangers to the business who could sue under the provisions of § 65-38 of the Code. Like results were reached in *Anderson* v. *Thorington Construction Co.,* 201 Va. 266, 110 S.E.2d 396; *Williams* v. *Gresham Company,* 201 Va. 457, 111 S.E.2d 498; *Lucas* v. *Biller,* 204 Va. 309, 130 S.E. 2d 582.

The evidence here does not permit the application of the rule of those cases. Here Barksdale was engaged in the business of Bolt, which was the sawmill business. Bolt sold lumber from his sawmill to Buffalo Shook and delivered it on the latter's premises on a truck driven by Barksdale. It was not a part of the trade, business or occupation of Bolt to unload the truck. When Barksdale undertook to help he was not engaging in the trade, business or occupation of Bolt and defendants did not thereby become engaged in the business of Bolt, but were clearly "other parties," strangers to the business of Bolt, against whom Barksdale's right of action was preserved by § 65-38. See *Kramer* v. *Kramer,* 199 Va. 409, 100 S.E.2d 37; *Bristow* v. *Safway Steel Products,* 4 Cir., 327 F.2d 608; *Garrett* v. *Tubular Products, Inc.,* 176 F.Supp. 101.

Defendants concede that under the evidence the question of contributory negligence was for the jury, but they argue that plaintiff assumed the risk of injury as a matter of law.

The defense of assumption of risk is closely associated with that of contributory negligence but is distinguishable from it. The essence of contributory negligence is carelessness, but of assumption of risk, venturousness—the voluntary assumption of a known hazard. *Tiller* v. *N. & W. Ry. Co.,* 190 Va. 605, 612, 58 S.E.2d 45, 48. Assumption of risk rests on two premises: (1) that the nature and extent of the risk are fully appreciated; and (2) that it is voluntarily incurred. *Davis* v. *Sykes,* 202 Va. 952, 954, 121 S.E.2d 513, 514; *Berry* v. *Hamman,* 203 Va. 596, 599, 125 S.E.2d 851, 854.

There was evidence that the employees of Buffalo Shook got on the back of the fork lift at any time; that it was not unusual for the operator of the fork lift to get men to stand on the back to hold it down when the load on the lift was too heavy. On this occasion when the lift was overloaded the operator got another man to stand on the lift along with the plaintiff. Plaintiff testified that he had gotten on the fork lift on many other occasions and that this was the first time it had ever "turned over" with him and that if he had had any idea it would happen this time he would not have got on it. There was no evidence sufficient to support the defense of assumption of risk.

Since this is so, no error was committed in refusing Instruction D, which would have told the jury that if the plaintiff assumed the risk of injury "by putting his weight upon the fork lift," they should find for defendants. In addition, the quoted language could have been understood by the jury to mean that the plaintiff assumed the risk by the act of putting his weight on the lift.

Defendants' final assignment of error is that the jury were allowed to take the motion for judgment into the jury room over their objection that "it contains matters as to which there may be no evidence." They point out in their brief, but did not point out to the trial court, that the motion for judgment contained an allegation that the plaintiff would in the future suffer severe pain and hospital and other medical expenses, whereas there was no evidence of any future hospital and medical expenses.

In *Gilliland* v. *Singleton*, 204 Va. 115, 129 S.E.2d 641, we said that the better practice is not to permit the pleadings to go to the jury. In that case the defendant's objection produced a colloquy between court and counsel, and resulted in the court's telling the jury to take the pleadings and read them if they wanted to. We held that the remarks of the court were prejudicial and under the circumstances it was improper to permit the pleadings to be taken into the jury room, and the case was reversed.

The allegations in the motion for judgment in the present case were not likely to mislead as were those in *Gilliland* and they were not commented on by the trial court. The extent and character of the plaintiff's injuries were fully developed by written statements of doctors presented to the jury as exhibits. The jury were specifically instructed as to the elements of damage to be considered, which did not include any future hospital and medical expenses.

While the giving of the pleadings to the jury to take into the jury room may result in prejudicial error, and should not be done, we are convinced that no prejudice resulted to the defendants therefrom in this case and the incident involved only harmless error.

For the reasons stated the judgment below is

*Affirmed.*