### Richmond

W<span style="font-variant:small-caps">ILLIAM</span> C. S<span style="font-variant:small-caps">TEVENS</span>

v.

F<span style="font-variant:small-caps">ORD</span> M<span style="font-variant:small-caps">OTOR</span> C<span style="font-variant:small-caps">OMPANY</span>

December 2, 1983.

Record No. 811236.

Present: All the Justices.

J. *Riley Johnson, Jr. (White, Johnson & Lawrence,* on briefs), for appellant.

*Allan S. Reynolds (Robert L. Mills; Reynolds, Smith & Winters,* on briefs), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

In this personal injury action, a jury awarded the plaintiff, William C. Stevens, a $704,000 verdict against Ford Motor Company. The trial court set aside the verdict on the ground that Stevens, as a matter of law, was guilty of assumption of the risk. Stevens appeals this ruling.

By assignments of cross-error, Ford contends: (1) Stevens' sole remedy is under the Virginia Workers' Compensation Act, Code § 65.1-1, *et seq.,* and (2) alternatively, as a matter of law, it was not negligent.*

Because the jury returned its verdict for Stevens, under well-established principles, we will view the evidence and all reasonable inferences drawn therefrom in the light most favorable to him. Stevens, a truck driver for Spector Freight Lines, regularly delivered automobile parts to Ford's automobile assembly plant in Norfolk. He had been engaged in this occupation for a number of years and was familiar with Ford's operation. When making deliveries, Stevens was required to back his truck to a loading dock where Ford employees, using forklifts, unloaded the parts.

At each door of a dock, Ford maintained and operated automatic dock levelers (also known as "dock plates"), which are

---

* Although Ford briefed other assignments of cross-error, these were neither discussed nor expressly reserved at oral argument. Therefore, consistent with established procedure, we have not considered them. *See, e.g., Bd. of Sup.* v. *Safeco,* 226 Va. 329, 339, 310 S.E.2d 445, 451(1983); *Cooley* v. *Cooley,* 220 Va. 749, 753 n., 263 S.E.2d 49, 52 n. (1980).

ramps connecting a truck's bed to the dock. The levelers enable a forklift to travel from truck to dock as it removes cargo, although the truck bed and dock may not be at the same level.

A leveler is designed so that, when a truck backs toward the dock, the leveler is activated, causing it first to rise and then to release downward upon the truck's bed. Although the levelers should operate automatically, they frequently malfunctioned. When this occurred, the dock doors were not closed; instead, the levelers were raised manually, either by a forklift or by a "strong-arm." A strongarm resembles a large "crowbar on wheels."

On May 10, 1978, Stevens arrived at the Ford plant with a truckload of parts. A Ford employee directed him to a particular dock door. Stevens knew that the leveler at that door had malfunctioned the previous day, and he asked the employee if it had been repaired. The employee said, "yes, but it [doesn't] make any difference, there [is] a forklift driver back there to handle the plate . . . if it [isn't] working."

When Stevens arrived at the door, he observed the leveler was inoperative. He asked John Sanderlin, a Ford forklift operator, to raise the leveler with his forklift. Instead of using his forklift, Sanderlin instructed a man, whose identity remains unknown, to raise the leveler.

Stevens testified that the unknown man was carrying a clipboard containing papers and was "checking in" engines at the plant. He also stated that the man was not employed by Spector Freight Lines. Sanderlin testified that the man was not a Ford employee.

The unknown man tried to raise the leveler with a strongarm, which ultimately became wedged between the leveler and the truck's bed. At that time, Stevens again sought Sanderlin's assistance with a forklift. Instead of using the forklift, Sanderlin alighted from it and assisted Stevens and the other man in trying to pull the strongarm free. This endeavor proved futile, and Sanderlin returned to his forklift, telling Stevens, "I haven't got time to mess with it. You help him get that out . . . ."

At this time, the leveler was elevated by the strongarm, and the blades of a forklift readily could have been inserted under the leveler to release the strongarm. Nevertheless, Sanderlin did not assist with his forklift.

Consequently, Stevens proposed to raise the leveler and release the strongarm by using two "four by four" pieces of wood, one as

a lever, the other as a fulcrum. Before Stevens began, he said to the other man, "Don't touch the strongarm. Don't move it. Don't do anything until I tell you to." The man indicated he would obey Stevens' admonition.

As Stevens was placing the pieces of wood, the strongarm suddenly flew through the air, hitting the top of the truck. The piece of wood Stevens was holding was thrown out from under the plate, causing the dock plate to fall on his foot. The unknown man exclaimed, "Oh, my God. I just twisted it and it flew out." As Stevens was being assisted from the truck, he noticed that, in falling, the leveler had moved in the direction of the truck's bed approximately three to four inches.

Because Stevens received workers' compensation benefits from his employer, Spector Freight Lines, the threshold question is whether the Workers' Compensation Act bars him from maintaining this tort action. We conclude it does not.

Code § 65.1-40 provides that the rights and remedies granted by the Act "shall exclude all other rights and remedies of such employee" to recover for an injury received during the course of employment. Code § 65.1-41, however, permits the employee to maintain an action against a third-party tortfeasor, provided the tortfeasor is an "other party." Ford is an "other party" if, at the time of the accident, Stevens and his employer were not performing work that was part of Ford's trade, business or occupation. *Burroughs* v. *Walmont,* 210 Va. 98, 99, 168 S.E.2d 107, 108 (1969).

To support its contention that Stevens' sole remedy is under the Act, Ford relies upon *Stout* v. *Onorati,* 221 Va. 143, 267 S.E.2d 154 (1980). Its reliance is misplaced. In *Stout,* unloading the cargo was part of the defendant's business, and, unlike the present case, the plaintiff's decedent and his employer were under a duty to assist in the unloading. Therefore, at the time of the accident, the plaintiff's decedent was engaged in the defendant's trade, business or occupation and was not an "other party" within the meaning of Code § 65.1-41. *Id.* at 150, 267 S.E.2d at 158.

The present case is strikingly similar to *Shook Company* v. *Barksdale,* 206 Va. 45, 141 S.E.2d 738 (1965). Barksdale was employed by Bolt, a sawmill operator. Barksdale delivered lumber to Shook Company which manufactured lumber products. Shook Company was responsible for unloading the lumber; neither Bolt

nor Barksdale had any duty to unload. At the request of a Shook employee, Barksdale assisted in the operation of a forklift used to remove the lumber from Bolt's truck and was injured. Barksdale, as Bolt's employee, received an award under the Workers' Compensation Act, and Shook Company contended that the award barred his tort action. In rejecting Shook's contention, we said:

> It was not a part of the trade, business or occupation of Bolt to unload the truck. When Barksdale undertook to help he was not engaging in the trade, business or occupation of Bolt and defendants did not thereby become engaged in the business of Bolt, but were clearly "other parties," strangers to the business of Bolt, against whom Barksdale's right of action was preserved by § 65-38 [now Code § 65.1-41].

*Id.* at 48, 141 S.E.2d at 741. Likewise, in the instant case, unloading the cargo was the sole responsibility of Ford, and because Stevens was not engaged in Ford's trade, business or occupation he can maintain this action.

In its other assignment of cross-error, Ford contends, as a matter of law, it was not guilty of negligence. Stevens, on the other hand, advances several theories of negligence which he argues were properly submitted to the jury. One theory is that the unidentified man was a negligent Ford employee, whose negligence is imputed to his employer.

If reasonable men could infer from the facts proved that the man was a Ford employee, the question is one for the jury's determination. *Chase* v. *Breit,* 226 Va. 102, 104, 306 S.E.2d 877, 878 (1983); *Southern States Coop.* v. *Doggett,* 223 Va. 650, 657, 292 S.E.2d 331, 335 (1982); *Richardson* v. *Lovvorn,* 199 Va. 688, 692-93, 101 S.E.2d 511, 514 (1958). The evidence established that Ford employed "checkers" who generally worked in the area where this man was seen working. The man was checking freight bills on a clipboard against serial numbers on engines received by Ford. When Sanderlin, a Ford employee, ordered him to assist Stevens with the leveler, the man laid his clipboard on a desk, secured a strongarm, and inserted it under the leveler. From these facts, the jury reasonably could infer that the man was a Ford employee.

Ordinarily, negligence is a jury issue. Its determination requires the sifting and evaluation of facts, which are matters exclu-

sively within the province of a jury. Negligence becomes a question for a court "only when reasonable men should not differ as to the conclusion to be reached from the facts and where one, and only one, conclusion, as a matter of law, is warranted." *Allen* v. *Brooks,* 203 Va. 357, 361, 124 S.E.2d 18, 21-22 (1962). *See also GEICO* v. *Gallop & James,* 224 Va. 720, 724, 299 S.E.2d 525, 527 (1983).

In the present case, the unknown man disobeyed Stevens' clear and unequivocal directions and without any warning "twisted" the strongarm. We cannot say, as a matter of law, that this was not a negligent act. The trial court, therefore, properly submitted the issue to the jury. Because the employee was acting in the course of his employment, his negligence is imputed to Ford. *Naccash* v. *Burger,* 223 Va. 406, 419, 290 S.E.2d 825, 833 (1982).

Finally, we consider Stevens' sole assignment of error: that the trial court erred in holding, as a matter of law, that Stevens assumed the risk. Assumption of the risk, like negligence and contributory negligence, is ordinarily a jury issue and becomes one for the court only when reasonable men should not differ as to the conclusion to be reached from the evidence. *Amusement Slides* v. *Lehmann,* 217 Va. 815, 819, 232 S.E.2d 803, 805 (1977).

The essence of assumption of the risk is "venturousness in voluntarily incurring a risk the nature and extent of which are fully appreciated." *VEPCO* v. *Winesett,* 225 Va. 460, 471, 303 S.E.2d 868, 875 (1983). *See also Kings Markets* v. *Yeatts,* 226 Va. 174, 181, 307 S.E.2d 249, 254 (1983); *Stoner* v. *Robertson, Adm'r,* 207 Va. 633, 637, 151 S.E.2d 363, 366 (1966). "Knowledge of the risk involved is essential to its assumption." *Budzinski* v. *Harris,* 213 Va. 107, 110, 189 S.E.2d 372, 375 (1972).

The trial court granted an instruction, tendered by Ford, which told the jury that Stevens could not recover if the jury found that he "fully understood the nature and extent of a known danger, and if he voluntarily exposed himself to it . . . ." By its verdict, the jury rejected assumption of the risk. We must determine, therefore, whether the evidence supports only the conclusion that Stevens fully appreciated the nature and extent of the risk, or whether reasonable men could differ thereon.

The crucial evidence concerning assumption of the risk is what occurred immediately before Stevens' injury. After Sanderlin refused to use his forklift to extricate the wedged strongarm,

he again instructed Stevens to assist the unidentified man. Stevens secured the two pieces of wood and planned to use them to pry the leveler and free the strongarm. He was aware that the efforts of three men failed to budge the strongarm. Nevertheless, before acting, he gave the other man clear instructions not to touch the strongarm until Stevens told him to do so, and the man indicated he would obey Stevens' directives. The man's unanticipated disobedience precipitated Stevens' injury, and we cannot say, as a matter of law, that Stevens fully appreciated the nature and extent of the risk.

We hold that reasonable men could reach different conclusions from the evidence respecting the issue of assumption of the risk and that the trial court erred in setting aside the verdict and entering judgment for Ford. Accordingly, the judgment of the trial court will be reversed and judgment entered in favor of Stevens in accordance with the verdict.

*Reversed and final judgment.*