PRESENT: Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and Agee, JJ., and Stephenson, S.J.

PATRICIA CROCKER

OPINION BY
v.  Record No. 060469   SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
January 12, 2007
RIVERSIDE BRICK & SUPPLY COMPANY, INC.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Theodore J. Markow, Judge

The sole issue in this appeal is whether the trial court erred in ruling that the plaintiff's personal injury action was barred pursuant to the Virginia Workers' Compensation Act, Code § 65.2-100, et seq. (the Act).

I

Patricia M. Crocker filed in the Circuit Court of the City of Richmond a motion for judgment against Riverside Brick & Supply Company, Inc. (Riverside), alleging that she had sustained severe injuries that had been proximately caused by the negligence of Riverside's employees.  Riverside filed a plea in bar, asserting that the trial court lacked subject matter jurisdiction because Crocker's claim was barred by Section 65.2-302 of the Act.  The trial court ruled that Crocker, at the time of her injury, was the statutory employee of Riverside and, therefore, her sole right and remedy was under the Act. Accordingly, the trial court sustained Riverside's plea and

dismissed the motion for judgment.  We awarded Crocker this appeal.

II

Riverside is in the business of selling masonry materials. Riverside purchased from Van Sant Equipment (Van Sant) stone that was to be delivered on pallets.  Van Sant hired Jevic, a shipping company, to deliver the stone to Riverside.  Crocker was employed by Jevic as a tractor-trailer driver.

On November 19, 2002, Crocker drove a tractor-trailer with a load of stone to Riverside's facility.  When she arrived at Riverside's delivery yard, she was met by Charlie W. Weeks, a Riverside employee, and he told her where to park.

Riverside did not have a loading dock, and it was very rare for materials to be delivered to Riverside by tractor-trailer. On the rare occasion that a delivery was made by tractor-trailer, the truck driver ordinarily moved the freight to the trailer's tailgate using a device called a "pallet jack."  It was unusual for a tractor-trailer to arrive without a pallet jack, but Crocker did not have one.

Weeks told Crocker that Riverside's employees would remove the pallets after they were dragged by a forklift to the trailer's tailgate.  From the tailgate, the pallets would be

2

lifted off the trailer by another forklift located on the ground. [*]

In order to drag the pallets to the tailgate, each pallet needed to be hooked by a strap attached to a forklift.  Weeks testified that he told Crocker that she would have to attach the strap hook to each pallet because Riverside employees were not allowed to go inside the trailer and that Crocker agreed to attach the strap.  Weeks, however, also testified that it was his responsibility to get the trucks unloaded and that, most of the time, he did it himself.  Crocker testified that "the company that we deliver to is supposed to unload the freight, because [Jevic] said all we're supposed to do is . . . back up to the dock, and [Riverside is] supposed to, with a forklift, take the pallets off."

Nevertheless, Crocker attached the strap hook to each of the pallets in the Jevic trailer.  She would then stand aside as Weeks, operating a forklift, dragged each pallet to the tailgate so that it could then be lifted off the trailer by another forklift, also operated by a Riverside employee. When the next-to-the-last pallet was to be unloaded, Crocker informed Weeks that there was a height change in the trailer's floor that would prevent the pallet from readily sliding across the floor, and

---

[*] If Riverside had had a loading dock, the pallets of stone could have been unloaded by a forklift.

3

she told Weeks to wait for her to exit the trailer before dragging the pallet.

Crocker attached the strap hook to the pallet and immediately moved away from it and toward the trailer's tailgate. Weeks, however, did not wait, and, before Crocker could exit the trailer, a board broke from the pallet, flew through the air, and hit her.

Notwithstanding its judgment, the trial court found that "the parties agree that it was the responsibility of Riverside employees to remove pallets from the delivery truck. . . . Delivering to Riverside[] . . . was the only responsibility of Ms. Crocker as an employee of Jevic." The trial court made no finding that any contractual obligation existed for Jevic, through its employee Crocker, to assist in unloading the trailer.

### III

The Act, in Code § 65.2-307, prohibits an employee from maintaining a tort action against his employer for an injury sustained during the course of his employment. An injured employee also is precluded from bringing a personal injury action against a party, who is _not_ his employer, if that party is deemed to be his "statutory employer."

Code § 65.2-302(A) sets forth the test for determining whether a party qualifies as a statutory employee as follows:

4

> When any person (referred to in this section as "owner") undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

Pursuant to Code § 65.2-307, the rights and remedies under the Act "shall exclude all other rights and remedies."  The only exception to this exclusivity provision is contained in Code § 65.2-309(A), which permits an injured employee to maintain an action against an "other party."  An "other party" is "a stranger to the trade, occupation, or business in which the employee was engaged when he was injured."  Peck v. Safway Steel Products, Inc., 262 Va. 522, 525, 551 S.E.2d 328, 329 (2001).

Riverside contends that Crocker, at the time of her injury, was engaged in an essential part of its trade, business, or occupation.  The trial court agreed, stating that "[r]emoving the product was the responsibility of Riverside, and Ms. Crocker's assistance in the removal qualified her as Riverside's statutory employee."

We have decided many cases regarding the delivery of various materials, and two of these cases have facts that are strikingly similar to the facts in the present case.  The more recent case is Stevens v. Ford Motor Co., 226 Va. 415, 309

5

S.E.2d 319 (1983), and the other is <u>Buffalo Shook Co. v. Barksdale</u>, 206 Va. 45, 141 S.E.2d 738 (1965).

In <u>Stevens</u>, the plaintiff was a truck driver employed by a freight line company. The plaintiff was injured while delivering automobile parts to a plant operated by Ford Motor Company (Ford). When the plaintiff arrived at the Ford plant, he found that Ford's loading dock was not in alignment with the truck's bed. He, therefore, asked a Ford forklift operator to raise the dock leveler (a ramp connecting the truck bed to the facility's loading dock) by using his forklift so the trailer could be unloaded. Instead of using his forklift, the Ford employee directed an unknown man to assist the plaintiff. While the plaintiff and the unknown man were trying to raise the leveler by hand, the leveler fell on the plaintiff's foot. The plaintiff received workers' compensation benefits from his employer for his injuries. 226 Va. at 417-19, 309 S.E.2d at 320-22.

The plaintiff then filed a tort action against Ford, which Ford contended was barred by the Act. <u>Id</u>. at 417, 309 S.E.2d at 320. We held that the plaintiff was not Ford's statutory employee, even though the plaintiff endeavored to assist in the unloading, because unloading the freight was the sole responsibility of Ford. The plaintiff was not engaged in Ford's trade, business, or occupation and, thus, could maintain the

6

action against Ford, who was an "other party."  Id. at 420, 309 S.E.2d at 322.

In Buffalo Shook Co., the plaintiff was a truck driver employed by Glen H. Bolt to deliver a load of lumber to Buffalo Shook Company (Buffalo Shook).  Bolt was a sawmill operator, and Buffalo Shook was engaged in manufacturing tobacco hogsheads and pallets from lumber purchased from Bolt and others.  The plaintiff's only duties were to drive the delivery truck and loosen chains so the lumber could be unloaded by Buffalo Shook.  At the request of a Buffalo Shook employee, however, the plaintiff assisted with the operation of a forklift used to take the lumber from the truck and was injured.  206 Va. at 46-47, 141 S.E.2d at 740.

The plaintiff received workers' compensation benefits for his injuries.  Id. at 47, 141 S.E.2d at 740.  He also filed a personal injury action against Buffalo Shook and one of its employees (the Defendants).  The Defendants contended that the plaintiff was precluded from maintaining the action because neither defendant was an "other party" as defined by the Act.  Id. at 46-47, 141 S.E.2d at 740.  In holding that the plaintiff could maintain the action, we said the following:

> Here [the plaintiff] was engaged in the business of
> Bolt, which was the sawmill business.  Bolt sold
> lumber from his sawmill to Buffalo Shook and delivered
> it on the latter's premises on a truck driven by [the
> plaintiff].  It was not a part of the trade, business

7

> or occupation of Bolt to unload the truck.  When [the plaintiff] undertook to help he was not engaging in the trade, business or occupation of Bolt and defendants did not thereby become engaged in the business of Bolt, but were clearly "other parties," strangers to the business of Bolt.

Id. at 48, 141 S.E.2d at 741.

We conclude that Stevens and Buffalo Shook Company are virtually indistinguishable from the present case and hold, therefore, that Riverside is an "other party" within the meaning of the Act.  In the present case, Crocker was not Riverside's statutory employee because, even though she endeavored to assist in unloading the pallets of stone, the unloading of the freight was the sole responsibility of Riverside.  Crocker was engaged only in the business of Jevic, which was under no duty or obligation to Riverside to unload the trailer, and therefore was not engaged in the trade or business of Riverside.  Accordingly, Crocker is not precluded by the Act from maintaining her tort action against Riverside.

IV

For the foregoing reasons, the trial court's judgment will be reversed, and the case will be remanded for further proceedings.

Reversed and remanded.

8