Present:  All the Justices

CECILIA RODRIGUEZ, ADMINISTRATOR
OF THE ESTATE OF UBALDO RODRIGUEZ

                                          OPINION BY
v.    Record No. 122029        CHIEF JUSTICE CYNTHIA D. KINSER
                                       FEBRUARY 27, 2014
LEESBURG BUSINESS PARK, LLC, ET AL.

              FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                      James H. Chamblin, Judge

     The circuit court sustained a plea in bar and dismissed

this wrongful death action on the basis that the plaintiff's

exclusive remedy is under the Virginia Workers' Compensation Act

(the Act), Code §§ 65.2-100 through -1310.  The primary issue is

whether an employee of a general contractor, hired by an owner

to construct warehouse buildings, was engaged in the "trade,

business or occupation" of the owner under Code § 65.2-302(A)

when the employee suffered fatal injuries in the course of

employment.  We conclude that the employee's work at the time of

the accident was not part of the owner's trade, business, or

occupation and will therefore reverse the circuit court's

judgment.

                      FACTS AND PROCEEDINGS

     Leesburg Business Park, LLC (LBP) contracted with E.E. Reed

Construction, LP (Reed) to construct warehouse buildings on a

parcel of undeveloped land owned by LBP and known as Leesburg

Business Park (Park).  Ubaldo Rodriguez (Ubaldo) was an employee

of Reed.  Ubaldo was fatally electrocuted when building

materials being moved by another Reed employee came into contact with overhead electrical power lines. The Virginia Workers' Compensation Commission entered an award of benefits to Ubaldo's statutory beneficiaries under the Act.

Cecilia Rodriguez (Rodriguez) is the widow of Ubaldo and the administrator of his estate. In her capacity as administrator, Rodriguez filed a wrongful death action under Code § 8.01-50, alleging that LBP caused Ubaldo's death by negligently failing to keep its premises reasonably safe for invitees such as Ubaldo.[1] LBP filed a plea in bar, arguing that Ubaldo was the "statutory co-employee of LBP under [the Act]," and therefore Rodriguez' claim was barred by Code § 65.2-307.

At an evidentiary hearing on the plea in bar, the circuit court heard testimony from William H. Lauer, LBP's initial manager and sole member. LBP, Lauer testified, is a "single source" entity, with no employees, which was created to own and develop a parcel of real estate and then lease or sell warehouses constructed on the parcel. LBP's operating agreement states that it was "formed for the purposes of acquiring, holding, improving, managing, leasing and selling real property in Virginia and elsewhere, and engaging in any other business agreed to by the members of the LLC and permitted under the laws

_____

[1] Rodriguez named other entities as defendants in the amended complaint, but they are not parties to this appeal.

2

of the Commonwealth of Virginia." Lauer described LBP's operation as follows: "[A]s owner and developer, we create the opportunity, we build it, we sell it, we lease it, and we manage it." After purchasing the property through a separate entity and determining that the property was "worthy of development," Lauer formed LBP and assigned the purchase contract to LBP. LBP, through contracts with other entities, then determined the feasibility of development and conducted various preliminary steps to enable development of the land. Those steps included architectural, engineering, legal, and financing work.

After considering a number of general contractors, LBP contracted with Reed to construct warehouse buildings on the property. Reed was "solely responsible for doing all of the components to build the building" and was "fully in charge" of construction. Under its contract with LBP, Reed was not responsible for obtaining building permits, paying utility fees, "[m]oving . . . the power lines," or providing "signage for the project." These responsibilities, and the responsibility of overseeing the construction process to ensure the work was done properly and according to specifications, were contracted to a consultant, or "owner's rep[resentative]." LBP had no role in the actual construction of the buildings. As Lauer stated, it did not "move earth[,] lay any rebar[,] pour any concrete [or]

install windows, plumbing [or] electrical."  LBP made its money from the sale and lease of the warehouses.

The circuit court found that "LBP was in the trade, business or occupation of purchasing, developing, constructing, selling and leasing warehouse buildings on" its parcel. "[C]onstruction of the warehouses," the court stated, "was a part of the trade, business or occupation of LBP."  Accordingly, the court concluded that Ubaldo "was a statutory co-employee of LBP" and that Rodriguez' recovery was limited to the Act.  On August 10, 2010, the court entered an order sustaining the plea in bar and dismissing the amended complaint with prejudice.

We awarded Rodriguez an appeal.  In an unpublished order, we held there was no evidence that Ubaldo and LBP were statutory co-employees.  Rodriguez v. Leesburg Business Park, LLC, Record No. 102127, slip op. at 4 (Jan. 6, 2012) (per curiam) (unpublished).  We noted that the term "statutory co-employee" is "not synonymous with the term 'statutory employee' as contemplated under Code § 65.2-302(A) in the context of the relationship between an alleged statutory employee and statutory employer."  Id.  We reversed the judgment of the circuit court and remanded the case for further proceedings.  Id.

On remand, LBP moved to reconsider its plea in bar based on the evidence presented at the original hearing.  LBP argued that the evidence established it was Ubaldo's statutory employer and

4

that Rodriguez' action against LBP was barred by the exclusivity provision under Code § 65.2-307(A). Rodriguez objected that the circuit court could not reconsider its ruling on the plea in bar because more than 21 days had elapsed since the court entered its order sustaining the plea and awarding final judgment. Thus, according to Rodriguez, Rule 1:1 divested the court of jurisdiction to modify its order. She also argued that the evidence did not establish that LBP was Ubaldo's statutory employer.

At a hearing, the circuit court first rejected Rodriguez' argument concerning Rule 1:1 and its jurisdiction to reconsider the plea in bar. The court then again found that LBP "was in the trade, business or occupation of purchasing, developing, constructing, selling and leasing warehouse buildings on" its parcel, and "the construction of the warehouses was a part of the trade, business or occupation of LBP." The court concluded that "LBP was the statutory employer of Ubaldo and that [Rodriguez'] recovery is limited to Workers' Compensation benefits only." It entered an order sustaining the plea in bar and dismissing the amended complaint with prejudice.

We awarded Rodriguez this appeal.

ANALYSIS

The primary issue on appeal is whether at the time of his fatal accident, Ubaldo was engaged in work that was part of

5

LBP's trade, business, or occupation, thus making LBP Ubaldo's statutory employer under Code § 65.2-302(A).  Determining whether work is part of the trade, business, or occupation of an owner is a mixed question of law and fact.  Carmody v. F.W. Woolworth Co., 234 Va. 198, 201, 361 S.E.2d 128, 130 (1987). The Court views the facts and any reasonable inferences raised by the evidence in the light most favorable to the prevailing party below, LBP, and determines whether the circuit court correctly applied the law to those facts.  Id.  Here, because the essential facts are undisputed, we are presented only with a question of law regarding the circuit court's application of the law to those facts and therefore apply a de novo standard of review.  See Hilton v. Martin, 275 Va. 176, 180, 654 S.E.2d 572, 574 (2008).

Answering the question before us "is not a simple, straightforward exercise," Henderson v. Central Tel. Co., 233 Va. 377, 382, 355 S.E.2d 596, 599 (1987); it "depends upon the facts and circumstances of the particular case [and] 'does not readily yield to categorical or absolute standards.'"  Johnson v. Jefferson Nat'l Bank, 244 Va. 482, 485, 422 S.E.2d 778, 780 (1992) (quoting Bassett Furniture Indus., Inc. v. McReynolds, 216 Va. 897, 902, 224 S.E.2d 323, 326 (1976)).

The Act's exclusivity provision, Code § 65.2-307(A), mandates that the rights and remedies provided in the Act

6

"exclude all other rights and remedies" of a covered employee or his beneficiaries for injuries sustained in the course of employment. An employee cannot maintain a common law tort action against his employer or a fellow employee for such injuries. Hudson v. Jarrett, 269 Va. 24, 29, 606 S.E.2d 827, 829 (2005). Likewise, an employee is barred from bringing such an action against a party who is not the employee's common law employer if that employer is nevertheless a "statutory employer" under Code § 65.2-302(A). Id. at 29-30, 606 S.E.2d at 829; cf. Clean Sweep Prof'l Parking Lot Maint., Inc. v. Talley, 267 Va. 210, 213, 591 S.E.2d 79, 81 (2004) ("The only exception to [the] exclusivity provision is provided in Code § 65.2-309(A) permitting an action to be maintained against an 'other party.' To be an 'other party,' a defendant must have been a stranger to the trade, occupation, or business in which the employee was engaged when he was injured.") (internal quotation marks omitted).

With the relevant parties from this case interpolated in brackets, Code § 65.2-302(A) states:

> When any person (referred to in this section as "owner") [LBP] undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") [Reed] for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner

7

[LBP] shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.[2]

The provisions of Code § 65.2-101, however, provide that "nothing in [the Act] shall be construed to make the employees of any independent contractor the employees of the person or corporation employing or contracting with such independent contractor."  Thus, in accordance with Code § 65.2-101, "the mere fact a business owner engages an independent contractor does not make that independent contractor's employees statutory employees of the owner."  Henderson, 233 Va. at 381, 225 S.E.2d at 598.  Code § 65.2-302(A), however, makes clear that an owner such as LBP can contract out all its work yet remain liable under the Act.  Id.

The two statutes read together mean that an owner cannot escape liability under the Act by merely contracting away work that is part of the owner's trade, business, or occupation.  Id. at 381, 225 S.E.2d at 598-99.  "'[I]f the work performed by an employee of the contractor or subcontractor is part of the owner's trade, business, or occupation,'" the owner is the statutory employer of the

_____

[2] Code § 65.2-302(B) and (C) apply the same standard to situations in which a contractor contracts with a subcontractor, or a subcontractor contracts with another subcontractor.

8

employee and "'is liable for compensation as though the worker were his own employee.'" Cinnamon v. IBM Corp., 238 Va. 471, 478, 384 S.E.2d 618, 621 (1989) (quoting Smith v. Horn, 232 Va. 302, 305-06, 351 S.E.2d 14, 16 (1986)). However, if the work is not part of the trade, business, or occupation of the owner, and the owner hires an independent contractor to perform the work, the contractor is liable to the employee under the Act, not the owner. Sykes v. Stone & Webster Eng'g Corp., 186 Va. 116, 122, 41 S.E.2d 469, 472 (1947).

As the Court has stated numerous times,

> [t]he purpose of [Code § 65.2-302] is to bring within the operation of the Act all persons engaged in work that is a part of the trade, business, or occupation of the party who undertakes as owner or who contracts as contractor to perform the work, and to make liable to every employee engaged in the work every such owner contractor, or subcontractor above such employee.

Pfeifer v. Krauss Constr. Co., 262 Va. 262, 266, 546 S.E.2d 717, 719 (2001) (internal quotation marks and footnote omitted).

Under these principles, it is thus necessary to determine whether construction was part of LBP's trade, business, or occupation. We begin that analysis by identifying "the nature of the particular owner." Nichols v. VVKR, Inc., 241 Va. 516, 521, 403 S.E.2d 698, 701 (1991). Unlike a governmental entity or public utility, see Henderson, 233 Va. at 383, 355 S.E.2d at

9

599, a private entity, such as LBP, "has broad discretion to choose its business activities." <u>Nichols</u>, 241 Va. at 521, 403 S.E.2d at 701. For this reason, the Court has generally applied the "normal work test" as enunciated in <u>Shell Oil Co. v. Leftwich</u>, 212 Va. 715, 187 S.E.2d 162 (1972):

> [T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test . . . is whether this indispensable activity is, in that business, <u>normally</u> carried on through employees rather than independent contractors.[3]

---

[3] The test does not apply when the "the work is obviously a subcontracted fraction of a main contract." <u>Shell Oil</u>, 212 Va. at 722, 187 S.E.2d at 167 (internal quotation marks omitted).

> In the context of the construction business, [this test] relates to a general contractor, the party obligated by the main contract with the owner to complete the whole project. If the work out of which the accident arose was . . . obviously a subcontracted fraction of [that] contract and . . . not a part of the trade, business or occupation of the owner, the general contractor who engaged the subcontractor to perform that fraction is the statutory employer of the injured worker, whether directly employed by the primary subcontractor or by a secondary subcontractor.

<u>Cinnamon</u>, 238 Va. at 476, 384 S.E.2d at 620 (internal quotation marks omitted).

10

Id. at 722, 187 S.E.2d at 167 (internal quotation marks omitted). This test, however, is "only a corollary guide, sometimes useful but not indispensable, in applying the literal language of the statutes to the facts in a particular case." Cinnamon, 238 Va. at 478, 384 S.E.2d at 621.

For example, in Nichols, the Greater Roanoke Transit Company (GRTC) owned a "construction/rehabilitation project designed to provide public mass transportation facilities, downtown parking facilities, retail and office space facilities, and revitalization and urban development" of a commercial shopping district. 241 Va. at 518, 403 S.E.2d at 699-700. Addressing a defendant's argument that the normal work test did not apply because GRTC had no employees, the Court stated:

> [T]his argument "misses the mark." . . . . The key issue here is whether construction and rehabilitation of a transportation and retail facility was part of GRTC's business purpose of providing mass transportation services. This purpose is established in its articles of incorporation.

Id. at 522, 403 S.E.2d at 702 (quoting Carmody, 234 Va. at 205, 361 S.E.2d at 132); see Evans v. Hook, 239 Va. 127, 132, 387 S.E.2d 777, 779 (1990) (stating that "a defendant's business structure and number of employees have never been considerations in deciding whether [it] is entitled to the [A]ct's immunity"). The Court stated that although GRTC clearly required a facility "from which their business is conducted," the actual

11

construction or adaptation of the facility "is not itself the trade, business, or occupation of the owner." Nichols, 241 Va. at 522, 403 S.E.2d at 702.

> We have considered construction or repair of such a facility not to be the trade, occupation, or business of an owner for purposes of determining whether a statutory employee or employer relationship exists unless those activities are normally carried out directly by the owner or are part of [its] normal activities.

Id. at 522, 403 S.E.2d at 702 (emphasis added).

In determining whether Ubaldo's construction work was part of LBP's trade, business, or occupation, we therefore do not simply examine whether LBP engaged in construction. Nor is the fact that LBP had no employees determinative. Rather, we must determine whether Ubaldo's construction work at the time of his fatal accident was part of LBP's business. See Carmody, 234 Va. at 205, 361 S.E.2d at 132; see also Floyd v. Mitchell, 203 Va. 269, 274, 123 S.E.2d 369, 372 (1962) ("The test is not whether the owner, by engaging an independent contractor to perform some part of his business, thereby engages in the business of the independent contractor. It is whether the independent contractor is performing work that is part of the trade, business or occupation of the owner.").

According to Lauer, LBP was created for a single purpose: to develop the Park so that LBP could ultimately lease or sell

12

the finished warehouses. It necessarily engaged in many preliminary steps or activities to accomplish its business purpose of selling or leasing the warehouses. The development of the property, including the construction of the warehouses, was obviously essential, just as a plant is to a manufacturer. See Cinnamon, 238 Va. at 478, 384 S.E.2d at 621 ("'Every manufacturer must have a plant, but this fact alone does not make the work of constructing a plant a part of the trade or business of every manufacturer who engages a contractor to construct a plant.'") (quoting Raines v. Gould, Inc., 343 S.E.2d 655, 659 (S.C. Ct. App. 1986)). While many activities may be important or even "indispensable" to the success of a business, those activities do not necessarily constitute the trade, business, or occupation of the owner. Cinnamon, 238 Va. at 475; 304 S.E.2d at 620; see Shell Oil, 212 Va. at 722-23, 187 S.E.2d at 167-68 (holding that retail sale of gasoline was indispensable activity to Shell Oil Company but nevertheless not part of its trade, business, or occupation). As a private entity, LBP had the "broad discretion to choose its business activities." Nichols, 241 Va. at 521, 403 S.E.2d at 701.

The circuit court dismissed this wrongful death action on LBP's plea in bar. A plea in bar presents a distinct issue that, if proven, bars a plaintiff's right of recovery. Hilton, 275 Va. at 179, 654 S.E.2d at 574. LBP, as the moving party,

13

had the burden of proving that Ubaldo's construction work at the time of the accident was part of LBP's trade, business, or occupation. See id. at 179-80, 654 S.E.2d at 574. We conclude, as a matter of law, that LBP did not carry that burden. Establishing that LBP contracted with Reed to construct the warehouses and sought to ensure that the work was "done properly" is not sufficient to establish that construction is part of LBP's trade, business or occupation. Henderson, 233 Va. at 381, 225 S.E.2d at 598 ("[T]he mere fact a business owner engages an independent contractor does not make that independent contractor's employees statutory employees of the owner."); Cinnamon, 238 Va. at 479, 384 S.E.2d at 622 (overseeing construction by employees does not compel the conclusion that construction is the trade, business or occupation of the owner). LBP may have demonstrated that the construction of warehouses was indispensable to the success of its business, but it did not prove that Ubaldo's construction work was part of LBP's trade, business, or occupation. See Cinnamon, 238 Va. at 475, 384 S.E.2d at 620.

In arguing that Ubaldo's construction work was part of its trade, business, or occupation, LBP relies principally on Pfeifer. There, as here, a company with no employees, Linkhorn Bay Associates, L.L.C., contracted all work on a project to subcontractors. 262 Va. at 265, 546 S.E.2d at 718.

14

An employee of one subcontractor sued another subcontractor, Krauss Construction Company of Virginia, Inc. (Krauss) for personal injuries sustained while Krauss employees were installing natural gas lines.  Id.  As a statutory co-employee case, the determinative issue was whether Krauss' "installation of the gas line was a part of the trade, business, or occupation of Linkhorn Bay, making Krauss [the plaintiff's] statutory co-employee."  Id. at 267, 546 S.E.2d at 719.  The Court held that it was: "Linkhorn Bay had been formed solely to build and develop these condominiums [and] had no other function[;] the installation of the gas lines was part of Linkhorn Bay's construction project covered by the terms of [the parties'] contract."  Id. at 268, 546 S.E.2d at 720.

Contrary to LBP's argument, Pfeifer does not control here. Determining whether work is part of the trade, business, or occupation of an owner "depends upon the facts and circumstances of the particular case."  Johnson, 244 Va. at 485, 422 S.E.2d at 780.  Linkhorn Bay had been formed "solely to build and develop . . . condominiums."  Pfeifer, 262 Va. at 268, 546 S.E.2d at 720 (emphasis added).  Its trade, business, or occupation was not disputed, and installing the natural gas lines and connecting them to the condominium units were obviously part of its business purpose to build the condominiums.

CONCLUSION

For these reasons, we conclude that LBP was not Ubaldo's statutory employer under Code § 65.2-302(A) at the time of his fatal accident. As a matter of law, the circuit court erred by granting LBP's plea in bar. We will reverse the circuit court's judgment and remand the case for further proceedings consistent with this opinion.[4]

*Reversed and remanded.*

---

[4] In light of our holding, we need not address Rodriguez' other assignments of error except for her argument that, under Rule 1:1, the circuit court lacked jurisdiction over the case to reconsider the plea in bar after this Court's first remand. Rodriguez' argument is without merit.

Upon Rodriguez' timely appeal from the circuit court's 2010 judgment sustaining the plea in bar, this Court obtained jurisdiction over the case. Ghameshlouy v. Commonwealth, 279 Va. 379, 390, 689 S.E.2d 698, 703 (2010). By reversing the circuit court's order and remanding the case, we vacated the circuit court's August 2010 order. See Nassif v. Board of Supervisors, 231 Va. 472, 480, 345 S.E.2d 520, 525 (1986) ("When this Court rules that the judgment of a trial court is erroneous . . . it is no longer viable. Unless we say otherwise, the slate is wiped clean, with the result that on remand the parties begin anew."). Although the circuit court made the same findings of fact on remand and concluded that LBP was Ubaldo's statutory employer, it did not simply modify its prior order. Instead, it entered a new order. That action, therefore, did not implicate Rule 1:1.

JUSTICE McCLANAHAN, with whom JUSTICE POWELL joins, concurring in part and dissenting in part.

Today the majority terminates the ability of injured workers to seek workers' compensation from developers like LBP, contrary to the remedial purposes of the Virginia Workers' Compensation Act (the Act). At the same time, the majority exposes such developers to common law tort liability that is completely at odds with applicable statutory and case law. The majority offers no discernible rationale for effecting these results. We are provided only the majority's conclusory assertion – contrary to the facts and law - that LBP failed to prove that Ubaldo, as Reed's employee, was performing work that was part of LBP's trade, business or occupation at the time of his work-related accident.

On the undisputed facts in this case, the circuit court correctly concluded that LBP was Ubaldo's statutory employer based on its finding that Reed's construction of the warehouses at Leesburg Business Park (the Park) was a part of LBP's trade, business or occupation. I would therefore affirm the judgment of the circuit court sustaining LBP's plea in bar pursuant to the Act's exclusive remedy provision.[1]

---

[1] In light of this conclusion, as explained in Part II below, I would also address, but would reject, Rodriguez'

Accordingly, I dissent from the majority's conclusion that LBP was not Ubaldo's statutory employer and its reversal of the circuit court's judgment.  However, I concur in the majority's rejection of Rodriguez' jurisdictional argument based on Rule 1:1.[2]

## I.  LBP'S STATUTORY EMPLOYER STATUS

### A. Controlling Statutes and Remedial Purpose

By the terms of the Act's exclusive remedy provision, Code § 65.2-307(A),[3] the rights and remedies provided in the Act are exclusive of all other rights and remedies that a covered employee and his beneficiaries might otherwise possess as a result of the employee's job-related accident.  Under this statute, an injured employee and his beneficiaries are precluded from maintaining a common law action against the employee's immediate employer for an injury sustained in the course of

_____

alternative argument that, even if LBP was Ubaldo's statutory employer, LBP waived its defense of immunity under the Act because LBP did not purchase workers' compensation insurance or qualify as a self-insurer.

[2] The majority discusses and disposes of Rodriguez' jurisdictional argument in footnote 4 of its opinion.

[3] Code § 65.2-307(A) states:

The rights and remedies herein granted to an employee when his employer and he have accepted the provisions of this title respectively to pay and accept compensation on account of injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise, on account of such injury, loss of service or death.

18

employment when the employee and the employer have accepted the Act's provisions.  See Hudson v. Jarrett, 269 Va. 24, 29, 606 S.E.2d 827, 829 (2005); Pfeifer v. Krauss Const. Co., 262 Va. 262, 266, 546 S.E.2d 717, 719 (2001).  An exception, however, to the Act's exclusive remedy provision is set forth in Code § 65.2-309(A), which permits the employee to bring a common law action against a third-party tortfeasor, provided the tortfeasor is an "other party" within the meaning of the Act.  Crocker v. Riverside Brick & Supply Co., 273 Va. 235, 238-39, 639 S.E.2d 214, 216 (2007); Anderson v. Dillow, 262 Va. 797, 799-800, 553 S.E.2d 526, 527 (2001).

An owner such as LBP, which is not the injured employee's immediate employer, is nonetheless "under the canopy of the [A]ct and entitled to the immediate employer['s] statutory immunity from common-law actions" if the owner qualifies as the injured employee's statutory employer, thereby negating "other party" status.  Evans v. Hook, 239 Va. 127, 131, 387 S.E.2d 777, 779 (1990).  The test for determining whether an owner becomes a statutory employer is set forth in Code § 65.2-302(A) as follows:

> When any person (referred to in this section as "owner") undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to

pay to any worker employed in the work any compensation
under this title which he would have been liable to pay if
the worker had been immediately employed by him.

The project owner is thus deemed to be the statutory employer of
the independent contractor's employees if those employees are
engaged in work that is a part of the owner's trade, business,
or occupation.[4]  If so, the owner is rendered liable to those
employees for workers' compensation benefits.

The purposes of Code § 65.2-302(A) are to afford protection
to "'the employees of [independent contractors] who are not
financially responsible,'" Bassett Furniture Industries, Inc. v.
McReynolds, 216 Va. 897, 902, 224 S.E.2d 323, 326 (1976)
(quoting Sears, Roebuck & Co. v. Wallace, 172 F.2d 802, 810 (4th
Cir. 1949)), and to "prevent an owner from escaping liability
under the Act by the simple expedient of subcontracting away
work which is part of its trade, business, or
occupation."  Henderson v. Central Tel. Co. of Va., 233 Va. 377,
381, 355 S.E.2d 596, 598-99 (1987).

These purposes are reflective of the "highly remedial"
nature of the Act, id. at 382, 355 S.E.2d at 599; Board of
Supervisors of Amherst County v. Boaz, 176 Va. 126, 134, 10
S.E.2d 498, 501 (1940), which is to be construed to effect its
fundamental purpose of providing workers with statutory

_____

[4] The employees, in turn, become the "statutory employees"
of the owner.  Crocker, 273 Va. at 238-39, 639 S.E.2d at 216.

20

compensation for accidental injuries resulting from the hazards of their employment.  Henderson, 233 Va. at 382, 355 S.E.2d at 599; Feitig v. Chalkley, 185 Va. 96, 98, 38 S.E.2d 73, 75 (1946).  Accordingly, in this case, even though Rodriguez does not seek workers' compensation benefits from LBP, "our consideration of this appeal is nevertheless governed by the principles that apply in a case where coverage is sought."  Henderson, 233 Va. at 382, 355 S.E.2d at 599.

### B.  LBP's Trade, Business or Occupation

The undisputed facts, material to the analysis of whether Reed's construction of the Park warehouses was part of LBP's trade, business, or occupation under the terms of Code § 65.2-302(A), are as follows.  LBP, a Virginia limited liability company, was organized by Lauer, its owner and sole member, for the purpose of "acquiring, holding, improving, managing, leasing and selling real estate," as set forth in its operating agreement.[5]  LBP was specifically organized to effect that purpose through the Park property project.  Upon its acquisition of the Park property, LBP was, in fact, responsible for the property being commercially developed, and for the sale and lease of the warehouse units that were constructed on the

---

[5] In this context, Black's Law Dictionary defines the word "improve" to mean: "To develop (land) . . . ."  Black's Law Dictionary 826 (9th ed. 2009).

21

property.  LBP received its income from the sale and lease of those warehouse units.

With no employees or equipment, LBP implemented its organizational objectives through Lauer, independent contractors and consultants.  LBP acquired the Park property as totally undeveloped, raw land.  In developing the property, LBP obtained, among other things: numerous studies regarding the financial viability of developing the Park property, the practicality of construction, and the risk of development; appraisals; bids from contractors; various government permits, bonds and approvals; and construction financing.

LBP made the decision to improve the Park property by the construction of the Park warehouses, obtained the necessary approvals for their construction, and procured an architect to design them.  After interviewing various contractors to construct the warehouses, LBP selected Reed.  LBP and Reed then entered into a contract making Reed solely responsible for constructing the warehouses to the agreed specifications.  LBP hired an owner's representative to oversee the construction process, "serving as [Lauer's] eyes and ears as to what's going on with the project," as Lauer explained.  Lauer had weekly meetings with this representative regarding the progress of the construction.  The architect that designed the warehouses also inspected, on LBP's behalf, Reed's work over the course of the

22

warehouses' construction. Lauer made the ultimate decision on any construction issues.

The majority, without acknowledging it, evidently accepts Rodriguez' central argument that because LBP did not, and could not, construct the Park warehouses itself, Reed's construction of the warehouses was not a part of LBP's trade, business, or occupation; rather, LBP was merely "investing in real estate," placing LBP outside the purview of the definition of statutory employer in Code § 65.2-302(A) for that part of the Park's development.

This argument is unavailing as it conflicts with the express terms of Code § 65.2-302(A), which imposes workers' compensation liability on an owner, as a statutory employer, when the owner undertakes through an independent contractor "the whole or any part of the work" that is "a part of [the owner's] trade, business or occupation." (Emphasis added). The statute thus "contemplates that an owner such as [LBP] can subcontract all its work yet remain liable under the Act." Henderson, 233 Va. at 381, 355 S.E.2d at 598. Hence, under our case law, "a defendant's business structure and number of employees have never been considerations in deciding whether [it] is entitled to the [A]ct's immunity" from a common law suit as a statutory employer. Evans, 239 Va. at 132, 387 S.E.2d at 779.

As this Court has previously explained, "an owner may perform or execute work that is part of [its] trade, business, or occupation through contractors or subcontractors, <u>directly employing no workers for the purpose</u>." <u>Smith v. Horn</u>, 232 Va. 302, 305, 351 S.E.2d 14, 16 (1986) (emphasis added) (citing <u>Anderson v. Thorington Const. Co.</u>, 201 Va. 266, 272-73, 110 S.E.2d 396, 400-01 (1959)). But "if the work performed by an employee of the contractor or subcontractor is [such a] part . . . the worker is deemed the statutory employee of the owner, and the owner is liable for compensation as though the worker were [its] own employee." <u>Id</u>. at 305-06, 351 S.E.2d at 16.

LBP utilized a business model for its development of the Park property that required no direct employees for the construction of its Park warehouses. However, LBP should be unable to thereby "escap[e]" statutory employer status. <u>Henderson</u>, 233 Va. at 381, 355 S.E.2d at 598. "[T]he whole [warehouse construction] work undertaken by [LBP]" was performed by Reed, LBP's independent contractor, in a manner contemplated by Code § 65.2-302(A). The undertaking was in furtherance of the express purposes for which LBP was established, and comprised the main component of the Park property's intended development and use. From the beginning, LBP's plan was to acquire the Park property in its unimproved state, improve the property through the construction of the Park

24

warehouses, and then sell or lease the warehouse units. The construction of the Park warehouses was thus necessarily an integral part of LBP's "trade, business or occupation" under the terms of Code § 65.2-302(A).

It is therefore inconsequential that LBP did not "make money off of the construction [of the warehouses] itself," as Lauer acknowledged, with Reed being paid to construct them. Even if LBP had performed the construction with employees of its own, it would not have made "money off of the construction itself," as the project's owner (i.e., LBP would not have received payments for its own construction work). In either case, LBP's income would have been generated at the point of sale and/or lease of the warehouse units, just like any other owner-developer of a similar project (with or without its own construction crew). By the very nature of commercial real estate development, the developer generates income upon completion of the project from the sale or lease of the developed property or some portion of it. Nonetheless, we have never deemed the point at which income is generated from a commercial undertaking to be dispositive in determining an entity's trade, business or occupation under Code § 65.2-302(A), and I see no good reason for doing so here.

Finally, the majority's stated reasons for rejecting LBP's reliance on Pfeifer plainly support the counter-position. Applying Code § 65.2-302 in Pfeifer, we held that an independent

contractor's installation of gas lines undertaken for a condominium development project was a part of the trade, business, or occupation of the owner-developer, Linkhorn Bay Associates, L.L.C. (Linkhorn Bay).  Much like LBP, Linkhorn Bay was a limited liability company that was organized for the purpose of developing condominiums, had no employees and "subcontracted all the work to various subcontractors."  Id. at 265, 546 S.E.2d at 718.  In attempting to distinguish Pfeifer, the majority points to the fact that Linkhorn Bay had been formed solely to build and develop condominiums.  The majority then concludes that "installing the natural gas lines and connecting them to the condominium units were obviously part of its business purpose to build the condominiums."  This observation seems to simply ignore the fact that LBP's development of the Park property by the construction of warehouse units was undisputedly in furtherance of LBP's organizational and business purpose, as set forth in LBP's operating agreement.  It would thus be completely illogical to contemplate that somehow installation of natural gas lines to those warehouse units would be a part of LBP's business purpose to build those units, but the actual construction of the units would not be a part of that purpose.

Accordingly, I would hold the circuit court correctly concluded that LBP was Ubaldo's statutory employer because

26

Ubaldo, as Reed's employee, was performing work that was a part of LBP's trade, business, or occupation at the time of his work-related accident.  Given the undisputed facts before it, the circuit court's conclusion was dictated by both the express terms of Code § 65.2-302(A) and the statute's remedial purpose.[6]

## II.  LBP AS UNINSURED STATUTORY EMPLOYER

Rodriguez argues that even if Ubaldo was LBP's statutory employer, pursuant to Code § 65.2-805 of the Act, LBP waived its defense of immunity in this action because LBP failed to purchase workers' compensation insurance covering Reed's employees, or to qualify as a self-insurer.

---

[6] I take issue with the majority's indication that, initially, LBP argued and the circuit court held that "Ubaldo and LBP were statutory co-employees," citing this Court's unpublished order in Rodriguez' first appeal, Rodriguez v. Leesburg Business Park, LLC, Record No. 102127, slip op. at 4 (Jan. 6, 2012) (per curiam).  At no time did the circuit court or LBP refer to LBP and Ubaldo as "statutory co-employees." (Emphasis added.)  This phrase was of Rodriguez' making, and then attributed to LBP and the circuit court by the current majority of this Court in its unpublished order remanding this case for reconsideration, as well as in its instant opinion.  The circuit court actually found in its initial ruling that "[Ubaldo] was a statutory co-employee of LBP."  (Emphasis added.)  This finding no doubt derived from LBP's use of this phrase in the context of framing the issue as a question of "whether [Ubaldo] was a statutory employee of LBP, as well as an employee of EE Reed."  LBP otherwise referred to Ubaldo as "LBP's statutory co-employee."  LBP also referred to itself as Ubaldo's "co-employer" and his "statutory employer."  Thus, while LBP's phraseology may have been novel for workers' compensation law, it did not reflect a misapprehension that LBP and Ubaldo were somehow "statutory co-employees."

On the facts of this case, LBP's uninsured status is immaterial.  Under the Act, both Reed, as Ulbaldo's immediate employer, and LBP, as Ulbaldo's statutory employer, would have been liable to Ulbaldo and his statutory beneficiaries for his work-related accident.  Upon Ulbaldo's death, the beneficiaries would have been entitled to benefits under the Act from either Reed or LBP, but not from both.  David White Crane Service v. Howell, 282 Va. 323, 329, 714 S.E.2d 572, 576 (2011).  The beneficiaries pursued their rights and remedies under the Act and obtained a full recovery of workers' compensation benefits from Reed.  Therefore, as the beneficiaries have received the "one full recovery" they were entitled to under the Act, id. (citation and internal quotation marks omitted), they would be barred from pursuing "other rights and remedies" against LBP under the Act's exclusive remedy provision.  Code § 65.2-307(A).  I would thus hold the trial court correctly rejected Rodriguez' argument that, because LBP was uninsured, it waived its immunity to suit in this common law action.

For these reasons, I would affirm the judgment of the circuit court in sustaining LBP's plea in bar pursuant to the Act's exclusive remedy provision.  I therefore dissent to the majority's conclusion that LBP was not Ubaldo's statutory employer and its reversal of the trial court's judgment.  I concur, however, in the majority's rejection of Rodriguez'

jurisdictional argument based on Rule 1:1, as the majority

addresses in footnote 4 of its opinion.